Filed 2/23/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JORENE YPANTO NICOLAS,<br><br>    Defendant and Appellant. | G052512<br><br>(Super. Ct. No. 12WF0170)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Steven D. Bromberg, Judge. Reversed.

Sylvia W. Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Allison V. Hawley, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury found defendant Jorene Ypanto Nicolas guilty of vehicular manslaughter with gross negligence. Essentially, defendant was on her phone and texting while driving on the freeway. The deceased victim had been in her car, stalled in a traffic jam. Defendant crashed into the rear of the victim's car at about 80 miles per hour.

In this appeal, defendant claims: a) there was insufficient evidence of gross negligence; b) the trial court committed three separate instructional errors; and c) the court abused its discretion by imposing an upper term sentence (six years).

We agree with defendant that the trial court committed three separate instructional errors. Indeed, one of the errors requires automatic reversal because it had the effect of lowering the prosecution's burden of proof. We need only address that particular issue in this opinion, but we will also discuss the remaining claims to give guidance to the trial court (and perhaps the parties) in any further proceedings.

I

FACTUAL AND PROCEDURAL SUMMARY

On the morning of April 27, 2011, defendant was driving northbound on the Interstate 405 freeway. Defendant was driving at a speed of about 80 miles per hour in her Prius when she crashed directly into the rear of a Hyundai. At the time of the collision, the traffic had been at a complete stop for about 20 to 30 seconds, but may have been just starting to move forward. The force of the collision caused the Hyundai to strike the vehicle in front of it, then the center divider. The driver of the Hyundai, Deanna M., died as a result of the collision.

The first 911 call regarding the collision came in at 10:59 a.m. In the preceding 17 minutes, defendant had sent eight text messages (10:42:11; 10:48:09; 10:52:16; 10:54:50; 10:55:46; 10:56:31; 10:56:57; 10:59:10), received six text messages (10:47:27; 10:49:13; 10:50:29; 10:53:46; 10:55:08; 10:55:23), and answered two phone calls (10:52:18, duration 27 seconds; 10:57:24, duration 20 seconds). After defendant was pulled from the passenger side of her vehicle by another driver, she asked, "What

2

happened?" The other driver told defendant that she had "hit somebody incredibly fast, and they're not doing well." Defendant said that she had been in a "big hurry" to meet her boyfriend for lunch.

As she stood near the center divider, defendant asked the other driver to retrieve her cell phone from her car. The other driver went to defendant's car, noticed that the phone was damaged on the floorboard, and offered to let defendant use his own phone. Another person who spoke to defendant said that "any question I asked her she would answer, 'Where is my phone?'" Defendant eventually retrieved her phone from her car and made calls at 11:08 and 11:09 a.m. Defendant was on her phone when a California Highway Patrol Officer arrived on the scene. When the officer asked defendant for her license and registration, she glanced at the officer and "kept talking on the phone." Another person noticed defendant yelling, "Oh, my God, my car."

On March 27, 2013, the prosecution filed an information charging defendant with vehicular manslaughter with gross negligence. (Pen. Code, § 192, subd. (c)(1).)[1] After 12 jurors were unable to reach a verdict (11 voted for conviction and one for acquittal), a second jury convicted defendant as charged. The court sentenced defendant to an upper term of six years in prison.

II

DISCUSSION

A. *The jury's finding of gross negligence is supported by substantial evidence.*

In a sufficiency of the evidence claim, a reviewing court determines whether a rational fact finder could have concluded defendant was guilty beyond a reasonable doubt. (*People v. Rowland* (1992) 4 Cal.4th 238, 269.) "Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin*

---

[1] Further undesignated statutory references will be to the Penal Code.

3

(1998) 18 Cal.4th 297, 331.)  Evidence is substantial when it is reasonable in nature, credible, and of solid value.  (*People v. Ramsey* (1988) 203 Cal.App.3d 671, 682.)  We consider the evidence, including the reasonable inferences drawn from the evidence, in the light most favorable to the judgment.  (*People v. Valdez* (2004) 32 Cal.4th 73, 104.)

Gross vehicular manslaughter is defined as "driving a vehicle in the commission of an unlawful act, not amounting to felony, and with gross negligence; or driving a vehicle in the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence."  (§ 192, subd. (c)(1).)  "The finding of an operator's gross negligence in driving a motorcar, when supported by substantial evidence, is conclusive upon the reviewing court and can be reversed only when that court becomes convinced by the evidence that freedom from gross negligence was so clearly established that reasonable minds could not differ upon the question."  (*People v. Flores* (1947) 83 Cal.App.2d 11, 14.)

"Gross negligence is the exercise of so slight a degree of care as to raise a presumption of conscious indifference to the consequences.  [Citation.]  'The state of mind of a person who acts with conscious indifferences to the consequences is simply, "I don't care what happens."'  [Citation.]  The test is objective:  whether a reasonable person in the defendant's position would have been aware of the risk involved.  [Citation.]"  (*People v. Bennett* (1991) 54 Cal.3d 1032, 1036.)  "*Gross negligence* involves more than ordinary carelessness, inattention, or mistake in judgment."  (CALCRIM No. 592.)

In determining what constitutes gross negligence, the case of *People v. Leitgeb* (1947) 77 Cal.App.2d 764 (*Leitgeb*), is instructive:  "[D]efendant was driving his car at 40 miles an hour, veered across a corner of, and struck decedent in, the safety zone.  According to his own testimony, he did not see decedent until the instant he struck him.  There was no evidence whatever as to any circumstance that would have made it necessary for defendant to invade the safety zone, nor was there any evidence of any

4

obstruction in the street, or other condition which would have prevented defendant's seeing decedent standing in the safety zone." (*Id*. at p. 769.) The court noted the defendant, "was not slowing down, nor did he have control of the car that would have enabled him to stop quickly if it should become necessary to do so in order to avoid an accident." (*Ibid.*) The court found that: "Not only was the conclusion of the jury a reasonable one, but in our opinion it was the more reasonable. There is not the least doubt in our minds that upon the state of facts which formed the basis of the verdict, appellant was guilty of gross negligence." (*Ibid*.)

Here, similar to *Leitgeb*, we have no doubt that substantial evidence supports the jury's finding of gross negligence. This was not a case of ordinary carelessness or a momentary lapse of attention. The evidence disclosed defendant was using her cell phone and texting for 17 minutes leading up to the collision. Defendant was driving at about 80 miles per hour and approaching a typical freeway traffic jam. But there was no evidence defendant took any evasive actions prior to the impact, which suggests she was oblivious to what was right in front of her. Further, immediately following the collision, defendant was preoccupied with her phone and was indifferent to the consequences of her actions. This evidence supports a reasonable inference that defendant displayed that same indifference just prior to the collision.

Defendant suggests that her postcrime actions and statements were not relevant. She is mistaken. "'Relevant evidence' means evidence . . . having *any tendency in reason to prove or disprove any disputed fact* that is of consequence to the determination of the action." (Evid. Code, § 210, italics added; see, e.g., *People v. Thompson* (2010) 49 Cal.4th 79, 113 [evidence of a "defendant's postcrime actions and statements . . . can support a finding that defendant committed a murder for which his specific mental state is established by his actions before and during the crime"].)

In sum, the jury's finding of gross negligence was supported by substantial evidence.

*B. The trial court imprecisely instructed the jury regarding general criminal intent.*

In criminal law, there are two descriptions of criminal intent: general intent and specific intent. "A crime is characterized as a 'general intent' crime when the required mental state entails only an intent to do the act that causes the harm; a crime is characterized as a 'specific intent' crime when the required mental state entails an intent to cause the resulting harm." (*People v. Davis* (1995) 10 Cal.4th 463, 518-519, fn. 15.) "General criminal intent thus requires no further mental state beyond willing commission of the act proscribed by law." (*People v. Sargent* (1999) 19 Cal.4th 1206, 1215.) If a crime is defined as a general criminal intent crime, the trial court has a sua sponte duty to instruct on the requirement of a union between the act and a defendant's general intent. (*People v. Jeffers* (1996) 41 Cal.App.4th 917, 920-923; CALCRIM No. 250.)

Criminal negligence is a separate mental state that is distinct from either general or specific intent. "In every crime or public offense there must exist a union, or joint operation of act and intent, *or criminal negligence*." (§ 20, italics added.) "Under section 20, criminal negligence 'may be sufficient to make an act a criminal offense, without a criminal intent.'" (*People v. Sargent*, *supra*, 19 Cal.4th at p. 1215.) Accordingly, when the prosecution is charging a crime of criminal negligence, the trial court should instruct the jury on the union between the act and a defendant's criminal negligence. (Judicial Council of Cal. Crim. Jury Instns. (2016) Bench Notes to CALCRIM No. 253, p. 71.)

Here, the court properly instructed the jury regarding the elements of gross vehicular manslaughter (CALCRIM No. 592): "To prove that the defendant is guilty of gross vehicular manslaughter, the People must prove that: [¶] "1. The defendant drove a vehicle; [¶] 2. While driving that vehicle, the defendant committed an infraction or otherwise lawful act that might cause death; [¶] 3. The defendant committed the infraction, or otherwise lawful act that might cause death with gross negligence; [¶] AND [¶] 4. The defendant's grossly negligent conduct caused the death of another

6

person.  [¶]  The People allege that the defendant committed the following infraction[]: Speeding.  [¶]  A later instruction tells you what the People must prove in order to prove that the defendant committed the infraction of Speeding.  [¶]  The People also allege that the defendant committed the following otherwise lawful acts that might cause death: Driving with Inattention."

Gross vehicular manslaughter has been characterized as a general intent crime.  (*People v. Butler* (1986) 184 Cal.App.3d 469, 474.)  But the crime more precisely entails the confluence of two different mental states:  general intent in the driving of the vehicle, and gross negligence while committing a traffic violation (in this case "Speeding") or gross negligence in the commission of a lawful act not amounting to a traffic violation (in this case "Driving with Inattention").  (See *People v. Jones* (1985) 164 Cal.App.3d 1173, 1182.)

The trial court imprecisely instructed the jury regarding general criminal intent:  "The crime charged in this case requires proof of the union, or joint operation, of act and wrongful intent.  [¶]  For you to find a person guilty of the crime of Gross Vehicular Manslaughter as charged in Count 1 or the lesser included offense of Misdemeanor Vehicular Manslaughter, that person must not only commit the prohibited act, but must do so with wrongful intent.  A person acts with wrongful intent when he or she intentionally does a prohibited act; however, it is not required that he or she intend to break the law."  (CALCRIM No. 250.)

It is true that in other instructions, the trial court more precisely informed the jury that gross vehicular manslaughter also requires a finding of gross negligence (CALCRIM No. 592), and that misdemeanor vehicular manslaughter also requires a finding of ordinary negligence (CALCRIM No. 593).  But the modified version of CALCRIM No. 250 used by the court to explain general criminal intent imprecisely identified gross vehicular manslaughter and misdemeanor vehicular manslaughter as

7

crimes involving only general criminal intent.[2]

In sum, there was an instructional error. But we will not analyze the prejudicial impact of this particular instructional error, if any, due to a separate instructional error that requires automatic reversal.

## C. *The trial court inaccurately instructed the jury regarding criminal negligence.*

The term "criminal negligence" is synonymous with the term "gross negligence." (*People v. Penny* (1955) 44 Cal.2d 861, 877-879; see *People v. Mehserle* (2012) 206 Cal.App.4th 1125, 1141, quoting *People v. Watson* (1981) 30 Cal.3d 290, 296-297 ["'Implied malice contemplates a subjective awareness of a higher degree of risk than does gross [i.e., criminal] negligence'"].) And again, gross negligence (or criminal negligence) is defined as "the exercise of so slight a degree of care as to raise a presumption of conscious indifference to the consequences. [Citation.]" (*People v. Bennett* (1991) 54 Cal.3d 1032, 1036.)

On the other hand, the term "ordinary negligence" is a lower standard of negligence that is distinct from either "criminal negligence" or "gross negligence." (*In re Dennis B.* (1976) 18 Cal.3d 687, 696-697.) Ordinary negligence is defined as "acts or omissions which are not compatible with the standard of care exercised by an abstract man of ordinary prudence." (*People v. Young* (1942) 20 Cal.2d 832, 836.) "Ordinary negligence . . . is the failure to use reasonable care to prevent reasonably foreseeable harm to oneself or someone else. A person is negligent if he or she does something that a reasonably careful person would not do in the same situation . . . ." (CALCRIM No. 593.)

---

[2] It should be noted that defendant's proposed instruction concerning general intent, which the court rejected, was inaccurate as well. That instruction characterized "the infraction of speeding" as a general intent crime. It is not. (*In re Jennings* (2004) 34 Cal.4th 254, 267 [certain "'public welfare offenses'" such as minor traffic violations do not require proof of wrongful intent].)

Here, the prosecution charged defendant with felony vehicular manslaughter, which requires a finding of gross negligence. (§ 192, subd. (c)(1).) A necessarily lesser included offense is misdemeanor vehicular manslaughter, but that crime only requires a finding of ordinary negligence. (§ 192, subd. (c)(2).) As to these two distinct crimes, the trial court correctly instructed the jury on the elements the prosecution was required to prove, including the required level of negligence for each offense: gross negligence for the felony charge (CALCRIM No. 592) and ordinary negligence for the misdemeanor offense (CALCRIM No. 593).

However, in two other jury instructions, CALCRIM Nos. 253 and 3404, the trial court used the term "criminal negligence," when it should have used the term "ordinary negligence." The Attorney General concedes the error and describes it concisely: "The trial court treated criminal negligence as a 'catch-all' term that encompassed both gross [felony] negligence and ordinary misdemeanor negligence."

As to CALCRIM No. 253, the trial court instructed the jury: "For you to find a person guilty of the crime of Gross Vehicular Manslaughter, a person must do an act or fail to do an act with gross negligence. Gross negligence is defined in the instructions on that crime. [¶] For you to find a person guilty of the lesser included crime of Misdemeanor Vehicular Manslaughter, a person must do an act or fail to do an act with *criminal negligence*. *Criminal negligence* is defined in the instructions on that crime." (Italics added.) Instead of using the term "criminal negligence," the court should have more accurately used the term "ordinary negligence." Indeed, "criminal negligence" was never defined in any other instruction.

As to CALCRIM No. 3404, the trial court instructed the jury: "The defendant is not guilty of Gross Vehicular Manslaughter or the lesser included offense of Misdemeanor Vehicular Manslaughter if she acted or failed to act accidentally without *criminal negligence*. You may not find the defendant guilty of Gross Vehicular Manslaughter or the lesser included offense of Misdemeanor Vehicular Manslaughter

9

unless you are convinced beyond a reasonable doubt that she acted with *criminal negligence.  Criminal negligence* is defined in another instruction."  (Italics added.)  Instead of using the term "criminal negligence," the court should have more accurately used the terms "gross negligence" or "ordinary negligence" as appropriate.  And again, the term "criminal negligence" was never defined in any other jury instruction.

In sum, the trial court inaccurately equated the term "criminal negligence" with "ordinary negligence" in CALCRIM Nos. 253 and 3404.  Therefore, there was instructional error as the Attorney General concedes.  However, we will not analyze the prejudicial impact of this error, if any, or the Attorney General's claim of invited error, because the next instructional error to be addressed requires automatic reversal.

*D.  The trial court committed instructional error by lowering the standard of proof for the alleged acts (phone use) that were part of the charged crime of vehicular homicide with gross negligence.  This instructional error requires automatic reversal.*

Generally, public policy prohibits a prosecutor from introducing evidence concerning a defendant's uncharged conduct or offenses in order to prove a defendant's character or propensity to commit a crime.  (*People v. Cottone* (2013) 57 Cal.4th 269, 285.)  "Except as provided . . . , evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion."  (Evid. Code, § 1101.)  The purpose of this evidentiary rule "is to assure that a defendant is tried upon the crime charged and is not tried upon an antisocial history."  (*People v. Aeschlimann* (1972) 28 Cal.App.3d 460, 473.)

However, a well-established exception to the general rule is that a defendant's uncharged conduct may be admitted "'not to prove a person's predisposition to commit such an act, but rather to prove some other material fact, such as that person's intent or identity.'"  (*People v. Rocha* (2013) 221 Cal.App.4th 1385, 1393.)  "Nothing in

10

this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . .) other than his or her disposition to commit such an act." (Evid. Code, § 1101, subd. (b).) Two other more recent statutory exceptions allow for the introduction of "other acts" evidence to show a defendant's actual "propensity" to commit a crime when that defendant is accused of either a sexual or a domestic violence offense. (Evid. Code, §§ 1108, 1109.)

A defendant's uncharged offenses or conduct may constitute "highly inflammatory" evidence. (*People v. Davis* (2009) 46 Cal.4th 539, 602.) Thus, whenever an exception for such "uncharged acts" evidence applies, a trial court must determine whether its probative value may be "substantially outweighed by the probability that its admission would create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (*Ibid.*; Evid. Code, § 352.)

If evidence of a defendant's uncharged conduct is admitted, a jury may consider that evidence if the jury "finds 'by a preponderance of the evidence' that the defendant committed" the uncharged acts. (*Alcala v. Superior Court* (2008) 43 Cal.4th 1205, 1224, fn. 14.) Proof by a "preponderance of the evidence" for an uncharged offense is a considerably lower burden of proof than the due process requirement of proof beyond a reasonable doubt for a charged offense. (See *People v. Johnson* (2004) 119 Cal.App.4th 976, 985.) Upon request, the trial court has an obligation to instruct the jury concerning the "limited purpose" of considering evidence admitted under Evidence Code section 1101, subdivision (b). (*People v. Carpenter* (1997) 15 Cal.4th 312, 382.) Further, the court must instruct the jury on precisely what issue or issues that evidence has been admitted to prove (e.g., intent, knowledge, lack of mistake or accident, etc.). (*People v. Swearington* (1977) 71 Cal.App.3d 935, 949.)

Here, after the close of evidence, defendant filed a motion seeking to restrict the prosecutor's closing arguments concerning her texting and phone calls prior to

11

the collision. Defendant argued: "In seeking their introduction, the prosecution's theory was that [the evidence of texting and phone calls] somehow established conduct on that particular day that was their basis for alleging gross negligence." Defendant was concerned that the evidence would also be used "to show propensity" and to "inflame the jury." As such, defendant moved "that there be no argument that in any way improperly argues propensity evidence . . . ."

The prosecutor responded by asking the trial court to instruct the jury concerning the use of "propensity" evidence under Evidence Code section 1101, subdivision (b). The prosecutor said that the instruction was needed: "Just because it has a cautionary protection for the defendant that it can't be considered for any other purpose, in light of the defense motion."

Over defendant's objection, the court gave the jury a modified version of CALCRIM No. 375, concerning evidence introduced under Evidence Code section 1101, subdivision (b). The court instructed the jury as follows: "The People presented evidence of *other behavior by the defendant that was not charged in this case*, that the defendant used her cell phone by phone call and text. [¶] You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed *the uncharged acts*. Proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true. [¶] If the People have not met this burden, you must disregard this evidence entirely. [¶] If you decide that the defendant committed the uncharged acts, you may, but are not required to, consider that evidence for the limited purpose of deciding . . . ." (CALCRIM No. 375, italics added.)

The jury instruction then went on to tell the jurors that they could consider the "uncharged acts" for three limited purposes: 1) to show intent; 2) to show knowledge; and 3) to determine whether "defendant's alleged actions were not the result

12

of mistake or accident[.]"  The instruction concluded with its standard admonitions:  "Do not conclude from this evidence that the defendant has a bad character or is disposed to commit a crime.  [¶]  If you conclude that the defendant committed *the uncharged acts*, that conclusion is only one factor to consider along with all the other evidence.  It is not sufficient by itself to prove that the defendant is guilty of Gross Vehicular Manslaughter or the lesser included offense of Misdemeanor Vehicular Manslaughter.  The People must still prove the charge beyond a reasonable doubt."  (CALCRIM No. 375, italics added.)

During closing argument, the prosecutor relied, in part, on the "uncharged acts" jury instruction:  "And the law tells you -- not the D.A, the law says you can use those texts, that conduct, to infer conduct and behavior as to [defendant's] mental state. That's not the D.A. trying to do that and putting it into a box for you, that's the law saying that goes to her intent, knowledge, and lack of accident or mistake.  You can look at that evidence for that purpose."

The trial court plainly committed error by instructing the jury regarding uncharged acts using CALCRIM No. 375; there were, in fact, no uncharged acts admitted into evidence.  Once again, the Attorney General concedes the instructional error and concisely describes it:  "[T]he evidence of appellants' text messages in the moments leading up to the collision were not the type of prior acts evidence contemplated under Evidence Code section 1101.  Given that the text messages and phone calls were a continuous back-and-forth conversation leading up to time of the collision, they were an indivisible part of the offense itself."

While conceding the instructional error, the Attorney General argues in the alternative that:  1) defendant forfeited the error; 2) defendant invited the error; or 3) the error was harmless.  As to the forfeiture and invited error claims, the trial court asked defendant's attorney:  "Have you had a chance to look at 375?"  The attorney responded, "Yes."  The court asked, "Any objection?"  The attorney responded, "Well, I would object to it being given."  In short, the Attorney General's arguments concerning

13

forfeiture and invited error are not well taken.

The Attorney General's remaining argument, that the error was harmless, would ordinarily be a matter that we would be constitutionally required to consider. (Cal. Const., art. VI, § 13; *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*); *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).) Generally, California appellate courts apply either one of two standards for assessing harmless error: (1) the *Chapman* test (harmless beyond a reasonable doubt); and (2) the *Watson* test (a reasonable probability the error was harmless). (See *Chapman*, *supra*, 386 U.S. at p. 24; *Watson*, *supra*, 46 Cal.2d at p. 836.) The more stringent *Chapman* test applies in cases where federal constitutional errors are made; the less stringent *Watson* test applies in other cases.

But the instructional error at issue here is the rare type of error that requires reversal per se. "Under article VI, section 13 of our state Constitution, trial error does not merit reversal of a judgment unless 'the error complained of has resulted in a miscarriage of justice.' . . . As we have explained, however, 'under the California constitutional harmless-error provision some errors . . . are not susceptible to the "ordinary" or "generally applicable" harmless-error analysis . . . and may require reversal of the judgment notwithstanding the strength of the evidence contained in the record . . . .' [Citation.] '[T]he kinds of errors that, regardless of the evidence, may result in a "miscarriage of justice" because they operate to deny a criminal defendant the constitutionally required "orderly legal procedure" . . . all involve fundamental "structural defects" in the judicial proceedings . . . .'" (*People v. Lightsey* (2012) 54 Cal.4th 668, 699 [denial of assistance of counsel].)

"An instruction that effectively lowers the prosecution's burden of proving guilt beyond a reasonable doubt is structural error because it 'vitiates *all* the jury's findings' and its effect on the verdict is 'necessarily unquantifiable and indeterminate.'" (*People v. Aranda* (2012) 55 Cal.4th 342, 365 (*Aranda*), quoting *Sullivan v. Louisiana* (1993) 508 U.S. 275, 281 (*Sullivan*).) In *Sullivan*, the United States Supreme Court

14

found structural error that required automatic reversal because the trial court had read an instruction to the jury that referred to the prosecution's burden of proof in terms of "'"'grave uncertainty'"'" and "'"'substantial doubt.'"'" (*Aranda*, *supra*, 55 Cal.4th at pp. 364-365 [referring to similar instruction given in *Cage v. Louisiana* (1990) 498 U.S. 39, 40].) "Harmless error analysis was not possible, *Sullivan* . . . explained, because the misdescription of the prosecution's burden of proof 'vitiate[d] *all* the jury's findings.' [Citation.] In describing the illogic of conducting a harmless error review . . . *Sullivan* observed that the 'proper role' [citation] of the appellate court is to look to 'the basis on which "the jury *actually rested* its verdict." [Citation.]' [Citation.] The premise of *Chapman* was 'simply absent' . . . , *Sullivan* explained, because there was 'no jury verdict of guilty-beyond-a-reasonable doubt . . . upon which harmless-error scrutiny [could] operate.' [Citation.]" (*Aranda*, at p. 365.)

The constitutional mandate requiring automatic reversal for an instructional error that effectively lowers the prosecution's standard of proof has been discussed and applied in two fairly recent California cases: *Aranda*, *supra*, 55 Cal.4th 342, and *People v. Cruz* (2016) 2 Cal.App.5th 1178 (*Cruz*). The California Supreme Court in *Aranda* did not find structural error that required automatic reversal; however, the Court of Appeal in *Cruz* found structural error that required automatic reversal.

In *Aranda*, the defendant was convicted of voluntary manslaughter, a substantive gang charge, and related firearm allegations. (*Aranda*, *supra*, 55 Cal.4th at pp. 351-352.) In its predeliberation instructions, the trial court failed to instruct the jury using "one of the two 'pattern' or 'standard' reasonable doubt instructions." (*Id*. at p. 349.) However, other "instructions specifically referred to the prosecution's burden of proof beyond a reasonable doubt." (*Id*. at p. 351.) The Supreme Court held that when a trial court has omitted the standard reasonable doubt instruction, but it has correctly instructed the jury regarding the prosecution's burden of proof in other instructions, and the trial court "*has not instructed* with a definition of reasonable doubt that effectively

15

lowers the prosecution's burden of proof, the error is subject to harmless error review." (*Id*. at p. 363, italics added.) Ultimately, in *Aranda*, the Supreme Court concluded that "there is no reasonable probability that the outcome of this trial . . . would have been more favorable to defendant had the trial court defined the reasonable doubt standard of proof in its predeliberation instructions." (*Id*. at p. 376.)

In *Cruz*, the defendant was convicted of committing lewd and lascivious acts against three children. (*People v. Cruz*, *supra*, 2 Cal.App.5th at p. 1180.) The trial court correctly instructed the jury that: "'In determining whether defendant has been proved guilty of any sexual crime of which he is charged, you should consider all relevant evidence, including whether the defendant committed any other sexual crimes, w*hether charged or uncharged*, about which evidence has been received. The crimes charged in counts 1, 2, and 3 may be considered by you in that regard.'" (*Id*. at pp. 1183-1184, italics added; Evid. Code, § 1108.) But the instruction also told the jury: "'If you find, by a *preponderance of the evidence*, that the defendant committed any such other sexual offense you may, but are not required to, infer that the defendant had a disposition to commit sexual offenses. [¶] If you find that the defendant had this disposition you may, but are not required to, infer that he was likely to commit and did commit the crime or crimes of which he is accused. [¶] However, even though you find by [a] *preponderance of the evidence* that the defendant committed another sexual offense, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes you are determining. . . .'" (*Id*. at p. 1184, italics added.) The appellate court noted that: "Other instructions reiterated that the reasonable-doubt standard applied to the ultimate question of guilt." (*Ibid*.)

On appeal, the defendant in *Cruz* argued that the "instruction was erroneous because it told the jurors they could find charged offenses true by a preponderance of the evidence and then use those findings to infer that [he] had a disposition to commit other charged offenses." (*Cruz*, *supra*, 2 Cal.App.5th at p. 1184.) The appellate court agreed

and reversed the convictions without conducting a harmless error analysis. "As our Supreme Court explained in [*Aranda*], an instructional error that has the effect of lowering the reasonable-doubt standard for guilt is one of the few errors deemed 'structural' and therefore reversible per se." (*Id*. at p. 1187.) *Cruz* held that: "The instruction given in this case, as we have said, presented the jury with a nearly impossible task of juggling competing standards of proof during different phases of its consideration of *the same evidence*. We think the ultimate effect is to lower the prosecution's burden of proving guilt beyond a reasonable doubt. Consequently, we find the error to be reversible per se and need not conduct a *Chapman* analysis." (*Ibid*., italics added.)

We are faced with the same type of instructional error that the appellate court dealt with in *Cruz*. Here, the trial court gave what the Attorney General concedes was an erroneous and unnecessary jury instruction. The instruction told the jury that the evidence concerning defendant's phone use immediately prior to the collision could be proven under a preponderance of the evidence standard. This had the effect of lowering the prosecution's burden of proof because this was *the same evidence* that the prosecution was using to prove gross negligence. Even though the jury was also told (through other jury instructions and argument) that it needed to find gross negligence (and ultimately defendant's guilt) under a reasonable doubt standard, the two competing standards of proof were addressing *the same evidence*. The court's instructional error not only presented the jury "with a nearly impossible task," but as a reviewing court, we have absolutely no way of knowing which of the two competing standards of proof the jury may have applied to *the same evidence*.

In sum, under the rule announced by our Supreme Court in *Aranda*, *supra*, 55 Cal.4th at page 363, and appropriately applied by the Court of Appeal in *Cruz*, *supra*, 2 Cal.5th at page 1187, we find that the trial court's erroneous jury instruction concerning "uncharged offenses" constitutes structural error and is reversible per se.

17

*E. The trial court did not abuse its discretion in imposing an upper term sentence.*

"A trial court's decision to impose a particular sentence is reviewed for abuse of discretion and will not be disturbed on appeal 'unless its decision is so irrational or arbitrary that no reasonable person could agree with it.'" (*People v. Jones* (2009) 178 Cal.App.4th 853, 860-861.) "In exercising . . . discretion in selecting one of the three authorized terms of imprisonment . . . , the sentencing judge may consider circumstances in aggravation . . . ." (Cal. Rules of Court, rule 4.420(b).) "Only a single aggravating factor is necessary to make it lawful for the trial court to impose" the upper term. (*People v. Jones*, *supra*, at p. 863, fn. 7.) One of the aggravating factors is that "[t]he victim was particularly vulnerable[.]" (Cal. Rules of Court, rule 4.421(a)(3).)

As defendant acknowledges, a victim of gross vehicular manslaughter who "has absolutely no advance warning or ability to attempt to avoid" a car that crashes into his or her vehicle may be characterized as a "particularly vulnerable" victim. (*People v. Weaver* (2007) 149 Cal.App.4th 1301, 1316.) Defendant urges us to disregard the reasoning of *Weaver*. We decline.

Here, among other reasons for choosing the upper term, the trial court noted the vulnerability of the victim as a factor in aggravation "because she had the expectation of safety" on the freeway at 11:00 a.m. Based on the totality of the record before us, we cannot find that the trial court abused its discretion.

18

III

DISPOSITION

The judgment is reversed.


MOORE, ACTING P. J.

WE CONCUR:


IKOLA, J.


THOMPSON, J.