Filed 8/16/24  P. v. Smith CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>ANTOINE SMITH,<br><br>　　　Defendant and Appellant. | A168343<br><br>(Alameda County Super. Ct. No. 142263) |

　　　In 2003, Antoine Smith was sentenced to 65 years and eight months to life in prison for a murder and an assault arising out of a street fight.  Smith's sentence included a number of enhancements, one of which was based on a prior prison term he had served.  In light of the Legislature's subsequent invalidation of that prior prison term enhancement and other intervening changes in law, and after two decades in prison during which time he engaged in significant rehabilitation efforts, Smith received a new sentence of 25 years to life.  In this appeal, Smith contends that the trial court misapprehended the law and abused its discretion in selecting his new sentence.  In addition, Smith asserts, and the People concur, that the trial court erred in failing to calculate and credit his actual time served against his new sentence.  We agree that a remand is necessary for the court to calculate and credit Smith's actual custody credits.  We otherwise affirm the trial court's judgment.

1

## BACKGROUND

### A.

Until January 1, 2020, Penal Code section 667.5, former subdivision (b)[1], mandated a one-year sentence enhancement for each true finding on an allegation the defendant had served a prior prison term within the preceding five years.  (§ 667.5, former subd. (b), as amended by Sen. Bill No. 1494 (2017-2018 Reg. Sess.), Stats. 2018, ch. 423, § 65, eff. Jan. 1, 2019; *People v. Burgess* (2022) 86 Cal.App.5th 375, 379-380 (*Burgess*).)  Effective January 1, 2020, the Legislature amended section 667.5, subdivision (b) to limit the enhancement to prior prison terms for sexually violent offenses.  (Sen. Bill No. 136 (2019-2020 Reg. Sess.), Stats. 2019, ch. 590, § 1, eff. Jan. 1, 2020; *Burgess,* at pp. 379-380.)

Relatedly, the Legislature amended the Penal Code to invalidate prior prison term enhancements for non-sexually violent offenses that were imposed before January 1, 2020, under section 667.5, former subdivision (b).  (*See* § 1172.75, subd. (a), as enacted by Sen. Bill No. 483 (2021-2022 Reg. Sess.), Stats. 2021, ch. 728, §§ 1, 3, eff. Jan. 1, 2022; Renumbered from section 1171.1 by Assem. Bill No. 200 (2021-2022 Reg. Sess.), Stats. 2022, ch. 58, § 12, eff. June 30, 2022.)  Section 1172.75 requires full resentencing for defendants serving terms that include an invalid prior prison term enhancement.  (§ 1172.75, subds. (c), (d); *People v. Monroe* (2022) 85 Cal.App.5th 393, 402 (*Monroe*); *see also People v. Carter* (2023) 97 Cal.App.5th 960, 966.)

Pursuant to section 1172.75, the resentencing "shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement," unless the court concludes by clear and convincing evidence that imposition of a lesser sentence would threaten public safety.  (§ 1172.75, subd.

---

[1] Undesignated statutory references are to the Penal Code.

2

(d)(1).) In addition, in conducting the resentencing, "[t]he court may consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (§ 1172.75, subd. (d)(3).) Further, the court "shall apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§ 1172.75, subd. (d)(2); *see, e.g.*, Cal. Rules of Court, rules 4.410, 4.421, 4.423.)

One such change in law applicable to Smith's resentencing involves section 654. Before 2022, that section provided that when "[a]n act or omission . . . is punishable in different ways by different provisions of law," the defendant "shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, former subd. (a), as amended by Sen. Bill No. 914 (1997-1998 Reg. Sess.), Stats. 1997, ch. 410, § 1, eff. Sept. 15, 1997.) Effective January 1, 2022, however, the Legislature amended section 654 to grant the sentencing court discretion to choose which punishment to impose and execute when the defendant's act or omission is potentially punishable under more than one provision of law. (§ 654, subd. (a), as amended by Assem. Bill No. 518 (2021-2022 Reg. Sess.), Stats. 2021, ch. 441, § 1, eff. Jan. 1, 2022; *see also People v. Mani* (2022) 74 Cal.App.5th 343, 379-380 (*Mani*).) Section 654, subdivision (a) now provides: "An act or omission that is punishable in different ways by different provisions of law may be punished under *either* of such provisions, but in no case

3

shall the act or omission be punished under more than one provision." (Italics added.)

Another applicable change in law is section 1385, subdivision (c), added in 2022, which grants the trial court discretion to dismiss an enhancement in the interest of justice. (Sen. Bill No. 81 (2021-2022 Reg. Sess.), Stats. 2021, ch. 721, § 1, eff. Jan. 1, 2022; *see People v. Coleman* (2024) 98 Cal.App.5th 709, 723-724.) Under section 1385, subdivision (c)(1), the court "shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." In exercising its discretion whether to dismiss an enhancement, "the court shall consider and afford great weight to" the defendant's evidence of mitigating circumstances. (§ 1385, subd. (c)(2).) Section 1385 instructs that proof of any of an enumerated list of mitigating circumstances "weighs greatly in favor of dismissing the enhancement," unless the court concludes that dismissal would threaten public safety. (*Ibid.*) The allegation of multiple enhancements in a single case is one mitigating circumstance; in that event, "all enhancements beyond a single enhancement shall be dismissed." (§ 1385, subd. (c)(2)(B).) Another mitigating circumstance applies when "[t]he application of an enhancement could result in a sentence of over 20 years"; such enhancement "shall be dismissed." (*Id.*, subd. (c)(2)(C).)

## B.

Smith's convictions arose from his shooting of Kendrick Dunbar during a street fight between Smith's sister, Latosha Stewart, and Dunbar's girlfriend, Sharika Jefferson, in August 2001. (*See People v. Smith* (July 8, 2004, A102068) [nonpub.

4

opn.] (2004 WL 1529164, at p. *1) (*Smith*).)[2] Due to an ongoing conflict between them, the two women planned to fight one another, so Stewart asked Smith to come to the fight to support her. (*Ibid*.) Smith had a gun in his pocket when he arrived at the fight. (*Ibid*.) Smith and Dunbar intervened to separate the two women during the fight, and at one point, Smith and Dunbar began shoving one another and exchanging angry words. (*Ibid*.) During the altercation, Smith fired two shots at Dunbar, killing him. (*Id*., at pp. *1-2.) Several witnesses testified that when Smith fired the second shot, Dunbar was lying on his back on the ground. (*Id*., at p. *1.)

A jury convicted Smith of first degree murder and found true an allegation that he personally and intentionally discharged a firearm to kill Dunbar. In addition, the jury found Smith guilty of assaulting Jefferson with a firearm and found true an allegation that he personally used a firearm in the assault. The jury also convicted Smith of possession of a firearm by a felon, based on a 2000 drug conviction.

The trial court sentenced Smith to a total of 65 years and eight months to life in prison and imposed restitution fines. Smith's sentence included a 25 years to life indeterminate term for the murder conviction and a 25 years to life attendant firearm enhancement; four years for assault and 10 years for the attendant firearm enhancement; and eight months for the firearm possession conviction. The court also imposed a one year enhancement under section 667.5 based on Smith's prior prison term for a 1994 drug possession conviction. The court imposed but stayed additional enhancements totaling 30 years.

---

[2] Because both parties rely on the summary of facts provided in the decision issued by this court in Smith's direct appeal, we do so as well. (*See Smith*, *supra,* A102068.)

On direct appeal, this Division affirmed the judgment.  (*See Smith, supra,* A102068.)

**C.**

Because Smith's sentence included an invalid prior prison term enhancement, in 2023 the superior court recalled his sentence and scheduled a resentencing hearing pursuant to section 1172.75.

In support of his resentencing, Smith submitted extensive evidence of his significant rehabilitation efforts during his 20-plus years in prison, his family support, and his job prospects. Smith submitted evidence that he participated in numerous self-help programs, completing personal skills courses, an alternatives to violence program, a Narcotics Anonymous program, a paralegal studies program, a vocational cabinetry program, and several other vocational, re-entry preparation, and educational courses or programs.  In addition, Smith submitted evidence that he had achieved the lowest security placement score possible while in prison, expressed remorse for his crimes, performed volunteer and other work, and helped support his autistic son.  He had developed a re-entry plan and had both a place to live and a job offer should he be released.

In light of Smith's postconviction circumstances, the prosecution offered to stipulate to a sentence of 25 years to life for the murder conviction, staying the imposition of all other counts and enhancements.

Contending that circumstances since the time of the murder have changed such that his continued incarceration is no longer in the interest of justice, Smith requested that the court sentence him to 14 years and eight months based on the four year assault term and the attendant 10-year enhancement, and the 8 month term for the felon in possession count.  He proposed staying the imposition of the sentence for the murder conviction

6

and the remaining enhancements. In the alternative, Smith asserted that the court should accept the prosecution's stipulated sentence.

After a hearing, the trial court concluded that a substantial reduction in Smith's sentence was appropriate given his commendable rehabilitation efforts, but in light of the gravity of the murder offense and considerations of punishment, deterrence, and uniformity in sentencing, the court rejected Smith's proposal to stay the murder sentence. Consistent with the prosecution's proposal, the court imposed the 25 years to life sentence for murder, staying the punishment for assault and possession of a firearm under section 654 and striking all the enhancements under section 1385. The court reduced Smith's restitution fine. With respect to custody credits, the trial court stated: "Mr. Smith's credits pre the original judgment were 834 days. Obviously, all the credits that he's accumulated since then under CDCR [California Department of Corrections and Rehabilitation] custody up until now is a matter of CDCR calculation."

## DISCUSSION

We review the trial court's sentencing decision for abuse of discretion and will not set it aside unless it is so irrational or arbitrary that no reasonable person could reach the same result. (*See People v. Carmony* (2004) 33 Cal.4th 367, 376-377 (*Carmony*); *People v. Nicolas* (2017) 8 Cal.App.5th 1165, 1182.) Because the trial court's decision was neither arbitrary nor irrational, we affirm.

## A.

Under section 654, the trial court had discretion to impose and execute the sentence for any one of the offenses for which Smith was convicted based on the same act or omission— including the one with the shortest prison term—while staying the execution of the other sentences. (*See Mani, supra*, 74

7

Cal.App.5th at pp. 379-380.) Smith contends that the trial court erred because it mistakenly believed, based on the prosecution's arguments, that it lacked discretion under section 654 to select the assault sentence as the principal term and stay the 25 years to life indeterminate sentence for murder. We disagree.

Although the prosecution suggested at one point that the district attorney "usually" needed to concur for the court to impose the lesser sentence, the prosecutor subsequently acknowledged to the court that it had discretion under section 654 to stay either the murder sentence or the assault sentence; the prosecutor's argument was that in considering the two available alternatives, the 14-year sentence for assault was an insufficient punishment given "reasonability and fairness concerns." The prosecutor recognized that section "654 has changed, and that . . . does give the Court that discretion," but argued that "[w]e're talking 25 to life versus a determinate term that means a forthwith release or 14 years on a case that was originally more than 60 to life."

Moreover, the record reflects that the court carefully considered Smith's proposed sentence before concluding that it would not serve the interests of justice. The court recognized that there was "merit" to both sentencing options proposed by the parties and that its task was "choosing between those" options. The court understood that under "the law of California as it stands," it had authority under section 654 to impose the lesser sentence, which would "cause[] [Smith] to be released forthwith." Further, the court explained that the choice involved "a difficult weighing process" and reached its decision to impose the murder sentence only after considering the relevant factors in detail. We therefore disagree that the court believed it lacked discretion to stay the murder sentence under section 654.

8

## B.

Smith next contends that in choosing to impose and execute his murder sentence, the trial court abused its discretion under sections 1172.75 and 654 by assigning greater weight to traditional sentencing considerations such as punishment and deterrence than to postconviction circumstances. He argues that under the trial court's approach, a defendant's current circumstances could never outweigh the factors relating to the offense, "the circumstances at the time" of the conviction, or "a comparison with other sentences for uniformity." We conclude the trial court acted within its discretion in resentencing Smith.

As Smith correctly observes, section 1172.75 constrains the trial court's discretion by establishing requirements aimed at shortening prison terms. For example, trial courts must apply new laws that "reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§ 1172.75, subd. (d)(2).) And section 1172.75 establishes a presumption in favor of a reduced sentence: resentencing "*shall* result in a lesser sentence than the one originally imposed" unless the trial court makes the requisite finding, under a heightened standard of proof, that a reduced sentence would pose a public safety risk. (§ 1172.75, subd. (d)(1) (Italics added); *Monroe, supra*, 85 Cal.App.5th at p. 402.) These directives reflect the Legislature's intent "to ensure equal justice and address systemic racial bias in sentencing." (Stats. 2021, ch. 728, § 1; *see also People v. Montgomery* (2024) 100 Cal.App.5th 768, 776-777, review granted May 29, 2024, S284662; *People v. Christianson* (2023) 97 Cal.App.5th 300, 314.)

Section 1172.75 also allows the trial court to take a variety of considerations into account in resentencing. One important set of considerations—relied upon by Smith—are postconviction factors, including whether circumstances postdating the offense demonstrate "that continued incarceration is no longer in the

9

interest of justice." (§ 1172.75, subd. (d)(3).) The court must also apply the Judicial Council's sentencing rules (§ 1172.75, subd. (d)(2)), which provide that the "[g]eneral objectives of sentencing" include protection of society, punishment, deterrence, prevention of recidivism, victim restitution, public safety, and uniformity in sentencing (Cal. Rules of Court, rule 4.410(a)). In taking these objectives into account, "the sentencing judge must consider which objectives are of primary importance in the particular case." (Cal. Rules of Court, rule 4.410(b).) The sentencing rules additionally provide guidance on mitigating and aggravating factors. (*See* Cal. Rules of Court, rules 4.421, 4.423.) Consistent with the sentencing rules, section 1172.75, subdivision (d)(4), provides that the court may consider "circumstances in aggravation" in determining whether to impose a sentence exceeding the middle term of imprisonment.

Thus, although section 1172.75 identifies considerations to guide the trial court's discretion in service of the Legislature's overarching goal of reducing prison sentences in the interest of justice, it does not specify the weight that the court must give to any particular factor or set of factors. (*Cf. People v. Garcia* (2024) 101 Cal.App.5th 848, 858 (recognizing that in a resentencing under section 1172.75, the trial court is not limited to considering postconviction conduct).) By contrast, section 1385, in granting discretion to dismiss enhancements, directs the court to "afford great weight" to evidence of mitigating circumstances. (§ 1385, subd. (c)(2).) The absence of similar language in section 1172.75 supports our conclusion that the trial court has discretion to consider and give weight to all factors referenced in the statute.

Here, the trial court carefully weighed the applicable factors and considered the relevant circumstances in detail. The court recognized that in determining a new sentence, section 1172.75 authorizes consideration of postconviction conduct, the typical sentencing factors under the sentencing rules, and the

10

impacts of the defendant's conduct on the victim's family as well as his own. (*See* § 1172.75, subds. (d)(2)-(3).) Consistent with section 1172.75 and the sentencing rules, the court considered aggravating factors, reasoning that Smith's offense was "a crime of great violence and great bodily harm," that it "involved a high degree of cruelty, viciousness, and callousness," that a weapon was used, and that the victim was in a particularly vulnerable position when Smith shot him. With respect to aggravating factors concerning Smith personally, the court noted that he engaged in violent conduct and, at the time of the offense, posed "a serious danger to society, although [given] all of the things that Mr. Smith has done since then, . . . [that has] lessened . . . quite a bit." In terms of mitigating factors, the court noted that Smith was unlikely to engage in violent conduct again, he had an insignificant or nonviolent prior record, he was fairly young (26) at the time of the crime, and he self-surrendered to law enforcement after the crime. The court also recognized that there were several enhancements that added over 20 years to Smith's sentence.

The court also carefully considered Smith's postconviction circumstances. The court noted that Smith's prison disciplinary record "has been very good," his security classification is the lowest possible category given his offenses, and he has had no violent interactions in prison. The court observed that Smith's rehabilitation record is "excellent," commending him for his participation in education, vocational training, work programs, volunteering, and substance abuse counselling. In addition, the court acknowledged that Smith has accepted responsibility for his crimes and expressed remorse. The court recognized that Smith had "good family support," a job offer, and a place to reside if released. And the court recognized that given that Smith has a son, he has "a motive to succeed" and "doesn't want to be re-incarcerated."

11

The trial court explained that all of Smith's post-conviction factors "are factors that in the interest of justice should positively [a]ffect Mr. Smith's sentence, but there are other interest of justice factors as well." The court discussed deterrence, punishment, the continuing impact on the victim's family, and uniformity in sentencing.

The court ultimately concluded that Smith's proposed sentence for assault, a term of 14 years and 8 months, "is just too extreme [of] a departure from the offense conduct and the relevant factors under 1172.75 and the [Rules of Court], and I cannot find in good conscience that the interest of justice would be served by staying a sentence for premeditated murder and effectively" treating Smith's case as an assault case. The court reasoned that imposing the 25 years to life sentence for murder, staying the sentences on the remaining counts, and striking all of the enhancements under section 1385—resulting in a 40-year reduction in Smith's sentence—met "the objectives of resentencing . . . under 1172.75." The court explained that the sentence it chose to impose provided "a substantial reduction in the sentence" based on Smith's postconviction conduct and at the same time "accommodate[d] and acknowledge[d] the severity of this violent, cruel crime" of premeditated murder, general deterrence, uniformity in sentencing, and victim's rights.

The trial court gave thoughtful consideration to the party's proposed sentences, thoroughly addressed the relevant factors, and arrived at a sentence that resulted in a significant sentence reduction—consistent with the goals of section 1172.75 as well as traditional sentencing factors. Where, as here, the sentencing court balanced the relevant circumstances and reached a neutral decision consistent with the law, we must affirm even if we might have arrived at a different determination in the first instance. (*Carmony*, *supra*, 33 Cal.4th at p. 378.)

12

## C.

Finally, the parties agree that the case must be remanded for the trial court to calculate Smith's actual custody credits at the time of resentencing. In conducting a resentencing, the trial court must calculate the actual time in custody served by the defendant before the resentencing and credit that time against the new sentence. (*See* § 2900.1; *see also People v. Buckhalter* (2001) 26 Cal.4th 20, 23, 40-41.) We therefore remand the case with instructions for the trial court to calculate and credit Smith's total time in custody.

## DISPOSITION

The matter is remanded for the trial court to determine and award Smith the custody credits to which he is entitled. The court shall order the clerk of the superior court to prepare an amended abstract of judgment memorializing this change and transmit a copy to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

BURNS, J.

WE CONCUR:

JACKSON, P.J.
SIMONS, J.

*People v. Smith (A168343)*

13