Filed 5/13/25  P. v. Velado CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G064556 |
| v. | (Super. Ct. No. RIF2100876) |
| NEOMI RENEE VELADO, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Riverside County, Matthew C. Perantoni, Judge. Affirmed.

Thien Huong Tran, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Assistant Attorneys General, A. Natasha Cortina and Melissa Mandel, Deputy Attorneys General, for Plaintiff and Respondent.

\*             \*             \*

Defendant Neomi Renee Velado was convicted of one count of gross vehicular manslaughter (Pen. Code, § 192, subd. (c)(1); count 1)[1] and one count of hit and run resulting in death (Veh. Code, § 20001, subds. (a), (b)(2); count 2). As to count 1, the jury also found true that defendant fled the scene (Veh. Code, § 20001, subd. (c)).

After defendant admitted aggravating factors, the court sentenced her to nine years in state prison as follows: (1) four years on count 1, plus five years for the hit and run enhancement; and (2) three years on count 2, which was stayed pursuant to section 654.

On appeal, defendant contends the evidence was insufficient to support her conviction on count 1 because her actions amounted to ordinary negligence rather than gross negligence. We disagree. Substantial evidence supports defendant's conviction for gross vehicular manslaughter. We accordingly affirm the judgment.

FACTS

I.

THE INCIDENT

In June 2020, defendant had dinner at her mother's home. Around 8:25 p.m., she exchanged text messages with her boyfriend. In two messages, the boyfriend remarked he knew defendant was drinking. Defendant responded she had not yet and just had a "tall can." The boyfriend believed the "tall can" referred to "[a]n Arizona."

Before midnight, defendant left her mother's home and drove to her boyfriend's home where she lived. On her way there, she struck and

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

2

killed a 21-year-old bicyclist who was riding his bike with two friends. The accident occurred around 11:54 p.m., and defendant fled the scene.

The next morning, defendant repaired her vehicle's windshield before heading into work. While at work, she called her mother and said she hit someone while driving the prior night but did not stop.[2] Her mother said they needed to do the right thing and go to the police. Defendant and her family later went to the police department where she was arrested.

When questioned by officers, defendant admitted to using marijuana sometimes daily and a few hours prior to the accident. She also said she did not feel intoxicated at the time of the accident. When officers searched her vehicle, they found marijuana inside.

A review of defendant's cell phone further revealed she had exchanged a flurry of text messages with her boyfriend in the minutes preceding the accident. Between 11:52 p.m. and 11:58 p.m.—the approximate time of the accident—defendant and her boyfriend exchanged 25 text messages. Earlier, at 11:39 p.m., defendant sent messages to her boyfriend. At 11:52 p.m., the boyfriend sent a message telling defendant to stop calling him. After defendant sent additional messages, her boyfriend again responded that he was trying to sleep at 11:53 p.m. Defendant asked why her boyfriend was being mean, and he said it was because she did not know how to go home. At 11:54 p.m., her boyfriend sent a message stating, "you are fucked up for this." He also said, "You were drinking," and defendant responded, "I'm sorry" at 11:55 p.m.

---

[2] At trial, defendant's mother testified defendant told her she hit "something." But defendant's boyfriend testified the mother confirmed defendant told her that she had hit "someone."

A few days after the accident, defendant's mother sent a text message to defendant stating the accident was a reflection of how defendant had chosen to live her life even though she did not intend to hurt anyone. Defendant responded the accident was humbling and a reason to rethink the way she had been living.

A detective ultimately determined defendant caused the accident because she was driving at an unsafe speed while texting in violation of Vehicle Code section 22350. Her speed limit should have been 0 miles per hour because she was texting, but she instead drove 45 miles per hour in a 35 mile-per-hour zone. Defendant also violated Vehicle Code section 21760, which requires vehicles to provide three feet of space when passing bicycles.

## II.

### DEFENDANT'S PRIOR ACCIDENT HISTORY

In addition to the incident above, defendant was involved in two prior accidents where her insurance company determined she was at fault. In June 2018, defendant rear-ended a vehicle that was stopped at a red light, drove around it, gestured with her middle finger or a peace sign, and fled the scene. Police subsequently located defendant who said she was looking at her cell phone at the time of the collision.

In September 2018, defendant struck a parked, unoccupied vehicle. She continued to drive before pulling over due to smoke emitting from the airbags. A friend then picked up defendant and took her to a repair shop. Defendant later returned to the scene and contacted the vehicle owner's sister. Defendant reported to officers that she had looked down to plug in her cell phone to the charging cord at the time of the collision.

About one month before defendant struck and killed the bicyclist, she completed an online traffic school course. Among other things, the course

noted the risks of driving after consuming alcohol and marijuana as well as the dangers of texting or using a cell phone while driving. Defendant earned a passing score of 76 percent on the final examination.

## DISCUSSION

Defendant contends there was insufficient evidence to support her conviction for vehicular manslaughter with gross negligence. She argues her inattention while driving amounted to ordinary negligence. We disagree. Substantial evidence supported her conviction for gross vehicular manslaughter.

### I.

#### APPLICABLE LAW AND STANDARD OF REVIEW

Vehicular manslaughter with gross negligence is defined as "driving a vehicle in the commission of an unlawful act, not amounting to a felony, and with gross negligence; or driving a vehicle in the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence." (§ 192, subd. (c)(1).)

"'Gross negligence is the exercise of so slight a degree of care as to raise a presumption of conscious indifference to the consequences. [Citation.] "The state of mind of a person who acts with conscious indifference[ ] to the consequences is simply, 'I don't care what happens.'" [Citation.] The test is objective: whether a reasonable person in the defendant's position would have been aware of the risk involved.'" (*People v. Nicolas* (2017) 8 Cal.App.5th 1165, 1171 (*Nicolas*).) "'*Gross negligence* involves more than ordinary carelessness, inattention, or mistake in judgment.'" (*Ibid.*) A jury should "consider all relevant circumstances . . . to determine if the defendant acted with a conscious disregard of the consequences rather than with mere inadvertence." (*People v. Bennett* (1991) 54 Cal.3d 1032, 1038.)

5

In addressing a claim of insufficient evidence, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] The appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) "[I]t is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence." (*People v. Maury* (2003) 30 Cal.4th 342, 403.) "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

A finding of gross negligence "'when supported by substantial evidence, is conclusive upon the reviewing court and can be reversed only when that court becomes convinced by the evidence that freedom from gross negligence was so clearly established that reasonable minds could not differ upon the question.'" (*Nicolas*, *supra*, 8 Cal.App.5th at p. 1171.)

II.

SUFFICIENCY OF THE EVIDENCE

Here, substantial evidence supports defendant's conviction for gross vehicular manslaughter. Defendant did not have a momentary lapse of attention. Instead, she used her cell phone and exchanged 25 text messages with her boyfriend in the minutes leading up to the accident. The evidence further disclosed she drove 10 miles over the speed limit while texting and

6

used marijuana a few hours before the accident. The text messages with her boyfriend suggest she also may have consumed alcohol before driving. After the collision, defendant fled the scene, repaired her windshield the next morning, and proceeded to work as usual, which suggests she was indifferent to the consequences of her actions. She did not report the accident to the police until after her mother recommended it. Prior to the instant accident, defendant caused two other collisions while handling or using her cell phone. She also recently completed driving school, which explained the dangers of phone use while driving as well as drug and alcohol use prior to driving. In short, the jury's finding of gross negligence was supported by substantial evidence. (*Nicolas*, *supra*, 8 Cal.App.5th at pp. 1172–1173 [sufficient evidence supported gross vehicular manslaughter conviction where the defendant sent text messages in the minutes leading up to the collision and drove over the speed limit].)

Defendant argues her actions did not rise to the level of gross negligence because many ordinary, careful people text while driving. She concludes her act of texting and driving amounted to ordinary negligence. But defendant did not just text and drive. As noted *ante*, there was evidence she traded a burst of text messages with her boyfriend while driving, consumed marijuana a few hours before the accident, and may have consumed alcohol before driving. She also was aware of the dangers of distracted driving given her prior accident history and driving school course. We are not "'convinced by the evidence that freedom from gross negligence was so clearly established that reasonable minds could not differ upon the question.'" (*Nicolas*, *supra*, 8 Cal.App.5th at p. 1171.)

## DISPOSITION

The judgment is affirmed.

SANCHEZ, ACTING P. J.

WE CONCUR:

MOTOIKE, J.

DELANEY, J.