Filed 5/13/21  P. v. Harris CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>WILLIE HARRIS,<br><br>    Defendant and Appellant. | B300984<br><br>(Los Angeles County<br>Super. Ct. No. A625636) |

APPEAL from an order of the Superior Court of Los Angeles County, Laura R. Walton, Judge. Affirmed.

Patricia J. Ulibarri, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Charles S. Lee and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

_____

# INTRODUCTION

Willie Harris appeals from the superior court's order denying his petition for resentencing under Penal Code section 1170.95.[1] He contends that the court erred in failing to issue an order to show cause under section 1170.95, subdivision (c), that his counsel's failure to request one constituted ineffective assistance, and that substantial evidence did not support the superior court's finding he was ineligible for relief. We conclude the court's error in not issuing an order to show cause under section 1170.95, subdivision (c), was harmless because the court nevertheless held an evidentiary hearing, as prescribed by section 1170.95, subdivision (d), where it found beyond a reasonable doubt Harris was ineligible for relief. Consequently, Harris has not demonstrated the requisite prejudice for an ineffective assistance of counsel claim. We also conclude substantial evidence supported the superior court's finding Harris was ineligible for relief because he was a major participant who acted with reckless indifference to human life. Therefore, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *A Jury Convicts Harris of First Degree Murder*

In 1983 a jury convicted Harris and a codefendant, Jean Pierre Thomas, of first degree murder in connection with the (uncharged) robbery and shooting death of Basil Calvert. The jury found Harris was a principal in the offense and was armed with a firearm within the meaning of section 12022, subdivision (a). At sentencing the trial court observed as a

---

[1] Statutory references are to the Penal Code.

2

mitigating factor that Harris "was not the trigger man," then sentenced him to a prison term of 25 years to life on the murder conviction, plus one year for the firearm enhancement.

B.      *Harris Appeals, and We Affirm*

In *People v. Harris* (1985) 175 Cal.App.3d 944 (*Harris I*) we affirmed Harris's conviction and sentence.  In our opinion we described the facts of the shooting:  "On the evening of April 6, 1983, Ms. Mary Jackson was driving . . . eastbound toward her home at approximately 744 Colden when she heard two shots.  She proceeded in the same direction and within a minute saw two men running westbound and therefore facing her.  These two men were the defendants, both of whom she had seen before.  She had seen 'Boo,' defendant Harris, around the neighborhood too many times to count.  She knew defendant Thomas as 'Powerful Pierre' and had seen him on prior occasions also."  (*Id.* at pp. 947-948.)

"Ms. Jackson had also known Basil Calvert, known as Deaf John, for approximately six months.  He was deaf, but he could speak and read lips.  Just after the shooting, she saw him stepping away from an apartment building and out into the street.  He was staggering and fell face down.  When Ms. Jackson got to the victim, he appeared to be alive, but he closed his eyes and died.  Both his eyeglasses and his hearing aid were missing."  (*Harris I*, *supra*, 175 Cal.App.3d at p. 948.)

"When Ms. Jackson had first seen the defendants, they were two yards from the victim's position, already in full stride running.  Defendant Harris had a gun.  Three or four men standing in the area next to a building did not run away."  (*Harris I*, *supra*, 175 Cal.App.3d at p. 948.)

"Earlier that evening between 7:30 and 8 p.m. 19-year-old Lawrence Bradley had seen defendant Harris, who had said that

he was 'going to do a jack.'  That meant that he was going to rob people.  At about 8 p.m., defendant Thomas came to Delitha Crain's house looking for defendant Harris, who was Ms. Crain's boyfriend." (*Harris I*, *supra*, 175 Cal.App.3d at p. 948.)

"Later that night Mr. Bradley saw defendant Harris with someone else on Colden, a great distance away.  As Mr. Bradley was walking down the street, defendant Harris asked whether he knew a 'deaf man.'  The deaf man was coming up some stairs as Mr. Bradley walked past him.  Defendant Harris then 'socked' the man, whose glasses flew off, and he fell.  The deaf man tried to say something when Mr. Bradley heard two shots and saw defendant Harris shoot the victim.  Mr. Bradley ran, and then the police arrived.  Mr. Bradley did not see the man with defendant Harris do anything." (*Harris I*, *supra*, 175 Cal.App.3d at p. 948.)

"At the time of trial Robert Stringer, also known as 'Monster,' refused to answer most of the questions put to him.  Thereafter Mr. Stringer was impeached with a prior statement made to Detective Eide on April 27, 1983, in which he indicated that he had known Boo for about 10 years; that on the night Deaf John was killed Mr. Stringer was visiting a girlfriend on Colden and defendant Harris arrived there at 7 o'clock; that he observed Deaf John by the front of the parking lot when defendant Harris went up to him and they started talking in sign language; that he saw Deaf John hand defendant Harris some money; and that defendant Harris stepped back a couple of steps and shot the victim." (*Harris I*, *supra*, 175 Cal.App.3d at pp. 948-949.) "Robert Stringer further stated to the detective that the next day defendant Harris came by the house and said that he had shot the victim; that Mr. Stringer told him it was stupid because there were so many people who saw it; and that defendant Harris indicated that he did not care as long as 'nobody snitched.'

4

Mr. Stringer also commented that defendant Harris had a .25 caliber automatic for a year." (*Id.* at p. 949.)

"On April 28, 1983, Detective Eide had a conversation with Robert Stringer at his house, at which time he stated that he saw the victim in front of 744 West Colden and saw both defendants go up to him; that the victim talked in sign language and gave defendant Thomas some money; that at this point defendant Harris 'socked Deaf John' and the victim staggered back; that defendant Thomas shot the victim twice with what sounded like a .25 caliber gun; and that both defendants had guns." (*Harris I*, *supra*, 175 Cal.App.3d at p. 950.) "Mr. Stringer further stated he knew that both defendants were with the 107th Hoover Crips, a local gang, and that is why he lied about what he saw. He was afraid to testify. He did not want their friends coming around after him and his family. He said that he was telling the truth because his brothers and family had told him to tell the truth and not to be afraid. In subsequent conversations Mr. Stringer told the detective that he was afraid to testify because defendants would shoot up his mother's house if he did." (*Ibid.*)

"Sometime after the shooting, Delitha Crain returned to her house. Both defendants approached her, and she said that a man got killed on Colden. Defendant Harris said to defendant Thomas, "'A man got killed on Colden. A man got killed.'" Defendant Thomas said, "'So,'" and laughed. She said, "'That ain't funny. You wouldn't be laughing if you go to jail.'" Then defendant Harris told her that defendant Thomas shot the victim." (*Harris I*, *supra*, 175 Cal.App.3d at p. 950.)

"After defendant Harris was taken into custody, he stated to Detective Monica Rhodes of the Los Angeles Police that he knew who had shot the victim and would make a telephone call to prove it. Thereafter Detective Rhodes and Detective Eide overheard and tape-recorded a conversation between defendant

5

Harris and defendant Thomas at which time defendant Harris said, "'They got me down for that man. I talked to the detectives. Hey, man, check this out. How many times you shoot that nigger?'" Defendant Thomas replied, "'I think once. I don't know. I don't know. I ain't talking on the phone.'" Defendant Harris then said, "'This guy named Pookie say you went and shot the deaf man. He said I had a Roscoe and shot that man.'" Defendant Thomas stated, "'You know you didn't do it.'" He further stated that he would 'try to get these niggers not to snitch and take care of things on the street.'" (*Harris I, supra,* 175 Cal.App.3d at p. 950.)

"On April 27, Tommie Delores Harris, defendant Harris' mother, had a conversation with defendant Thomas at her home. She asked defendant Thomas whether he shot the deaf man, and he said, "'Yes.'"'" (*Harris I, supra,* 175 Cal.App.3d at p. 950.)

C.    *The Superior Court Denies Harris's Petition Under Section 1170.95*

In January 2019 Harris filed a petition for resentencing under section 1170.95, indicating that at trial he was convicted of first degree murder under the felony murder rule and that he could not now be convicted because of changes, effective January 1, 2019, to sections 188 and 189. Finding Harris "demonstrated a prima facie case that he qualifies for re-sentencing" under section 1170.95, the superior court appointed counsel.

The People filed two briefs opposing Harris's petition, one arguing section 1170.95 was unconstitutional (a contention the People have abandoned), the other arguing Harris did not, in any event, qualify for relief because, in particular, "he was a major participant in the robbery [of Calvert] and acted with reckless indifference to human life." The latter brief, citing section

6

1170.95, subdivision (d), acknowledged that "the People must prove [Harris's] ineligibility beyond a reasonable doubt," and to establish Harris was a major participant who acted with reckless indifference to human life, the People's brief applied factors the Supreme Court identified as relevant in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*). Three exhibits accompanied the brief: (1) this court's opinion in *Harris I*, *supra*, 175 Cal.App.3d 944, (2) Harris's opening brief in his direct appeal, and (3) the stipulated testimony of Detective Rhodes and the reporter's transcript of Harris's preliminary hearing in August 1983.

Harris, through counsel, filed two briefs in reply, one addressing the statute's constitutionality, the other arguing the People had "not established proof beyond a reasonable doubt that [Harris] acted with reckless disregard or indifference for life" under *Banks*, *Clark*, and other cases. The People filed two more briefs, again arguing that section 1170.95 was unconstitutional and that Harris was factually ineligible for relief.

On May 1, 2019 the superior court held a hearing on the petition, which the court continued several times, ultimately to August 20, 2019. In the meantime, counsel for Harris filed three exhibits in support of the petition: the transcript of Harris's sentencing hearing; excerpts from the trial testimony of Robert Stringer, Detective Rhodes, and Detective Eide; and the trial testimony of George Bolduc, a Deputy Medical Examiner in the Los Angeles County Coroner's Office, who testified about his examination of Calvert's body. Bolduc testified that, although he found "scrapes" around Calvert's eyes and nose that were consistent with falling and hitting pavement, he found no signs Calvert was punched in the face in the few minutes before he died.

The superior court began the August 20, 2019 hearing by stating it was holding "an 1170.95 hearing" because Harris had made a prima facie case he "was entitled to the hearing." The court stated: "It's my understanding that, if the defendant makes the prima facie case, that he's entitled to a hearing, then the burden then goes to the People to show the court that he is not entitled to be resentenced under 1170.95." The People agreed and argued that, under the *Banks* and *Clark* factors, Harris was a major participant in the crime who acted with reckless indifference to human life. Counsel for Harris argued that "the reckless indifference is what's . . . most important in making the decision whether or not, under the new law, Mr. Harris is guilty beyond a reasonable doubt of murder." And on that point, he cited Bolduc's testimony to argue that other witnesses might have been mistaken in testifying they saw Harris punch Calvert just before the shooting.

The superior court found Harris was a major participant who acted with reckless indifference to human life, and on that basis the court denied the petition. (The court found the "constitutional issue," therefore, was "moot.") Harris timely appealed.

## DISCUSSION

A.  *Senate Bill No. 1437 and the Section 1170.95 Petition Procedure*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015, § 4), effective January 1, 2019, eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843) and significantly limited the felony murder exception to the malice requirement for murder. (See *People v.*

*Rodriguez* (2020) 58 Cal.App.5th 227, 236 (*Rodriguez*), review granted Mar. 10, 2021, S266652; *People v. Bascomb* (2020) 55 Cal.App.5th 1077, 1080.)  Senate Bill No. 1437 also authorized, through new section 1170.95, an individual convicted of felony murder or murder under a natural and probable consequences theory to petition the court to vacate the conviction and request resentencing on any remaining counts if he or she could not have been convicted of murder because of Senate Bill No. 1437's changes to the law.  (See *Gentile*, at p. 843.)

If a petition under section 1170.95 contains all the required information, including a declaration by the petitioner that he or she was convicted of murder and is eligible for relief (§ 1170.95, subd. (b)(1)(A)), section 1170.95, subdivision (c), prescribes a process for the court to determine whether to issue an order to show cause:  "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section.  If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner.  The prosecutor shall file and serve a response . . . and the petitioner may file and serve a reply . . . .  If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."

We have explained that the superior court proceeds under section 1170.95, subdivision (c) in two steps, "one made before any briefing to determine whether the petitioner has made a prima facie showing he or she falls within section 1170.95—that is, that the petitioner may be eligible for relief—and a second after briefing by both sides to determine whether the petitioner has made a prima facie showing he or she is entitled to relief." (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 328 (*Verdugo*), review granted Mar. 18, 2020, S260493; accord, *People v. Soto* (2020) 51 Cal.App.5th 1043, 1054, review granted Sept. 23, 2020,

S263939; *People v. Drayton* (2020) 47 Cal.App.5th 965, 975; but see *People v. Cooper* (2020) 54 Cal.App.5th 106, 118 [section 1170.95, subdivision (c), has only one prima facie review before the court issues an order to show cause], review granted Nov. 10, 2020, S264684.)  If the court concludes the petitioner has failed to make the initial prima facie showing, the court need not appoint counsel.  (*Verdugo*, at pp. 332-333; but see *Cooper*, at p. 123 [a petitioner is entitled to counsel upon filing a facially sufficient petition that requests counsel be appointed].)

If the court issues an order to show cause, it must hold a hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1170.95, subd. (d)(1); see *Rodriguez*, *supra*, 58 Cal.App.5th at p. 237, review granted.)  At the hearing the prosecution has the burden of proving beyond a reasonable doubt the petitioner is ineligible for resentencing.  (§ 1170.95, subd. (d)(3); *Rodriguez*, at p. 237.)  The prosecutor and petitioner may rely on the record of conviction or offer new or additional evidence.  (See *Rodriguez*, at p. 237; *People v. Tarkington* (2020) 49 Cal.App.5th 892, 898-899, review granted Aug. 12, 2020, S263219; *People v. Edwards* (2020) 48 Cal.App.5th 666, 674, review granted July 8, 2020, S262481.) "The record of conviction includes the reviewing court's opinion." (*People v. Lewis* (2020) 43 Cal.App.5th 1128, 1136, fn. 7, review granted Mar. 18, 2020, S260598.)

> B.  *The Superior Court's Error in Not Issuing an Order To Show Cause Was Harmless*

Harris contends that the superior court erred in not issuing an order to show cause under section 1170.95, subdivision (c), and that we must therefore remand with directions for the court to do so.  The People concede that the superior court erred in failing to issue an order to show cause, but argue that the error

was harmless because the court held an evidentiary hearing as prescribed by section 1170.95, subdivision (d), after which the court denied the petition. We agree with the People the court's error was harmless.

The superior court did not comply in every respect with the procedure prescribed by section 1170.95, subdivision (c). Having determined Harris made a prima facie case he was "qualifie[d]" for resentencing under section 1170.95, the court appointed counsel for him, received briefing from the People and from Harris, and held an evidentiary hearing, as contemplated by section 1170.95, subdivision (d), where the court determined the People proved beyond a reasonable doubt Harris was not eligible for resentencing.[2] Prior to holding that evidentiary hearing, the

---

[2] Harris does not dispute the superior court applied the beyond-a-reasonable-doubt standard of proof. In his reply brief, however, he states "it is not at all *clear*" the court applied that standard consistent with our decision in *Rodriguez*, *supra*, 58 Cal.App.5th 227, review granted (see *id.* at pp. 243-244 ["it is the court's responsibility to act as independent fact finder and determine whether the evidence establishes a petitioner would be guilty of murder under amended sections 188 and 189"]) and points to what he describes as "a silent record" on the issue. To the extent Harris is arguing the superior court did not apply the standard of proof consistent with *Rodriguez*, the argument lacks merit. First, we do not presume error where the record is silent. (See *People v. Torres* (2020) 47 Cal.App.5th 984, 989.) Second, the record indicates the court applied the standard correctly. The court repeatedly stated it found Harris was a major participant who acted with reckless indifference to human life and at no time mentioned applying, for example, what we referred to (and rejected) in *Rodriguez* as "essentially substantial evidence

11

court should have conducted the more nuanced, two-step prima facie review described in *Verdugo*, *supra*, 44 Cal.App.5th 320, review granted, and issued an order to show cause. Its failure to do so was error.

We review such an error, however, for prejudice under the standard of *People v. Watson* (1956) 46 Cal.2d 818, 836, according to which a defendant "must demonstrate there is a reasonable probability that in the absence of the error he or she would have obtained a more favorable result." (*People v. Lightsey* (2012) 54 Cal.4th 668, 699; see *ibid.* ["[t]ypically, a defendant who has established error under state law" must meet this standard]; *People v. Daniel* (2020) 57 Cal.App.5th 666, 676, review granted Feb. 24, 2021, S266336.)[3] Harris has not shown the superior court's failure to conduct its prima facie review in two steps or its failure to issue an order to show cause prejudiced him in any way. The court found Harris made the prima facie case required by section 1170.95, subdivision (c), and—after appointing counsel and receiving briefing in compliance with subdivision (c)—held a hearing on the petition that complied with subdivision (d), in particular with its provisions that the prosecution and petitioner may rely on new or additional evidence outside the record of

---

standard for appellate review." (*Rodriguez*, at p. 238; see *id.* at p. 240.)

[3] Harris does not argue the superior court's procedural errors violated his federal constitutional rights (see *People v. Nicolas* (2017) 8 Cal.App.5th 1165, 1179 [the "more stringent" test of "harmless beyond a reasonable doubt," under *Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 17 L.Ed.2d 705], applies "in cases where federal constitutional errors are made"]) or were structural errors not subject to harmless-error analysis (see *People v. Lightsey*, *supra*, 54 Cal.4th at p. 699).

conviction and that the prosecution has the burden of proving beyond a reasonable doubt the petitioner is ineligible for relief.

Attempting to characterize the August 20, 2019 hearing as the second step in the superior court's prima facie review of his petition, Harris argues the court engaged in factfinding that is impermissible at that stage and deprived him of the opportunity to introduce evidence he was not a major participant who acted with reckless indifference to human life. But the record belies Harris's characterization of the hearing: The briefs of both parties in advance of the hearing, the superior court's comments at the beginning of the hearing, and the nature of the argument that followed show that everyone involved understood the court had completed its prima facie review of the petition and was proceeding to hold an evidentiary hearing at which the People had the burden of proving beyond a reasonable doubt Harris was ineligible for resentencing. Nor has Harris identified any favorable evidence he was precluded from introducing. He cites the trial testimony of Bolduc that examining Calvert's body did not reveal any indication Calvert was punched, but counsel for Harris introduced and relied on that evidence at the hearing.

Harris analogizes this case to *People v. Drayton*, *supra*, 47 Cal.App.5th 965, but that case is readily distinguishable. There, the court reversed an order summarily denying a section 1170.95 petition, concluding the superior court erred in finding the petitioner did not make a prima facie case for relief, and remanded with directions for the superior court to issue an order to show cause and hold a hearing under section 1170.95, subdivision (d). (*Drayton*, at pp. 968, 972, 981.) Unlike the defendant in *Drayton*, Harris was not denied the evidentiary hearing to which he was entitled under section 1170.95, subdivision (d). For the same reason, Harris's reliance on our decision in *People v. Harris* (2021) 60 Cal.App.5th 939 (*Harris*),

13

review granted April 28, 2021, S267802, is equally unavailing. (See *id.* at pp. 960-961 [reversing an order denying a petition under section 1170.95 because an evidentiary hearing was necessary to determine whether the petitioner was ineligible for relief].)

C.    *Harris Has Not Demonstrated He Received Ineffective Assistance of Counsel*

Harris contends his appointed counsel's failure to "demand" the superior court issue an order to show cause under section 1170.95, subdivision (c), constituted ineffective assistance.  To establish ineffective assistance of counsel, "'"a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant."'" (*People v. Rices* (2017) 4 Cal.5th 49, 80.)  "If a claim of ineffective assistance of counsel can be determined on the ground of lack of prejudice, a court need not decide whether counsel's performance was deficient."  (*In re Crew* (2011) 52 Cal.4th 126, 150; see *Strickland v. Washington* (1984) 466 U.S. 668, 697 [104 S.Ct. 2052, 80 L.Ed.2d 674] ["[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed"].)  As discussed, Harris has not shown he was prejudiced in any way by the superior court's failure to issue a formal order to show cause, and thus he has not shown he was prejudiced by his counsel's failure to request one.  Therefore, he

14

has not demonstrated he received ineffective assistance of counsel.[4]

D. *Substantial Evidence Supported the Superior Court's Finding That Harris Was Ineligible for Relief*

Harris also contends substantial evidence did not support the superior court's finding he was ineligible for relief under

---

[4]   Whether a petitioner has a constitutional right to effective assistance of counsel in section 1170.95 proceedings is unclear. Section 1170.95 "is an act of lenity not subject to Sixth Amendment analysis." (*People v. James* (Apr. 27, 2021, A159207) ___ Cal.App.5th ___, ___ [2021 WL 1625015, p. 1]; see *People v. Perez* (2020) 54 Cal.App.5th 896, 908, review granted Dec. 9, 2020, S265254; *People v. Lopez* (2019) 38 Cal.App.5th 1087, 1114-1115, review granted Nov. 13, 2019, S258175.)  Once the petitioner makes a prima facie showing under section 1170.95, subdivision (c), he or she has a right to court-appointed counsel (see *Verdugo*, *supra*, 44 Cal.App.5th at p. 332, review granted; *People v. Lewis, supra*, 43 Cal.App.5th at p. 1140, review granted), a statutory right that may also be grounded in due process (see *In re Clark* (1993) 5 Cal.4th 750, 779-780 [habeas corpus proceeding]; *People v. Shipman* (1965) 62 Cal.2d 226, 232 [coram nobis proceeding].)  But as the court explained in *People v. Cole* (2020) 52 Cal.App.5th 1023, review granted October 14, 2020, S264278, "having a constitutional right to the appointment of counsel is not the same as having a constitutional right to the effective assistance of that counsel," and the "Supreme Court has steadfastly held that 'there is no constitutional right to the effective assistance of counsel' in state postconviction proceedings." (*Id.* at p. 1032.)  Because Harris has not shown his counsel provided ineffective assistance, we do not decide this issue.

15

section 1170.95 because he was a major participant who acted with reckless indifference to human life.  His contention lacks merit.

1.    *Applicable Law and Standard of Review*

Senate Bill No. 1437 "amended the definition of felony murder in section 189.  Under the new law, an accomplice to the underlying felony who was not the actual killer cannot be convicted of felony murder unless he or she aided in the murder with the intent to kill or [was] 'a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.'" (*People v. Law* (2020) 48 Cal.App.5th 811, 815, quoting § 189, subd. (e)(3), review granted July 8, 2020, S262490.)  The new law thus incorporates "the same requirements for proving the defendant acted with reckless indifference to human life as a major participant in one of the identified serious felonies as necessary for a felony-murder special-circumstance finding under section 190.2, subdivision (d)." (*Harris*, *supra*, 60 Cal.App.5th at p. 954, review granted.)  The Supreme Court in *Banks*, *supra*, 61 Cal.4th 788 and *Clark*, *supra*, 63 Cal.4th 522 clarified "[t]he factors properly considered in assessing such a felony-murder special-circumstance finding." (*Harris*, at p. 954.)

"In *Banks* the Supreme Court identified factors courts should consider in determining whether a defendant was a 'major participant' under section 190.2, subdivision (d):  'What role did the defendant have in planning the criminal enterprise that led to one or more deaths?  What role did the defendant have in supplying or using lethal weapons?  What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants?  Was the defendant present at the scene of the

16

killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?'" (*Harris*, *supra*, 60 Cal.App.5th at pp. 954-955, review granted.)

"In both *Banks* and *Clark* the Court explained that, to determine whether the defendant acted with reckless indifference, courts must 'look to whether a defendant has "'knowingly engag[ed] in criminal activities known to carry a grave risk of death.'"' [Citation.] Specifically, '[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed, demonstrating reckless indifference to the significant risk of death his or her actions create.' [Citation.] As further refined in *Clark*, 'reckless indifference' 'encompasses both subjective and objective elements. The subjective element is the defendant's conscious disregard of risks known to him or her . . . . [R]ecklessness is also determined by an objective standard, namely what "a law-abiding person would observe in the actor's situation."'" (*Harris*, *supra*, 60 Cal.App.5th at p. 955, review granted.)

"The Supreme Court in *Clark* set out a series of considerations relevant to determining whether a defendant had acted with reckless indifference to human life (with some obvious overlap with the major-participant factors specified in *Banks*). Among others, was the defendant aware that guns would be used; did the defendant himself or herself use a gun; did the defendant have an opportunity to reduce the overall risk of violence during the felony or to aid the victim; did the defendant know his or her cohorts were likely to use lethal force? [Citation.] Specifically with respect to the facts before it, the *Clark* court emphasized, '[W]hile the fact that a robbery involves a gun is a factor beyond the bare statutory requirements for first degree robbery felony

17

murder, this mere fact, on its own and with nothing more presented, is not sufficient to support a finding of reckless indifference to human life for the felony-murder aider and abettor special circumstance.'" (*Harris, supra*, 60 Cal.App.5th at p. 955, review granted.)  Thus, "'felony murderers . . . who simply had awareness their confederates were armed and armed robberies carried a risk of death[ ] lack the requisite reckless indifference to human life.'" (*Clark, supra*, 63 Cal.4th p. 618; accord, *Banks, supra*, 61 Cal.4th at p. 809.)

We review the superior court's factual findings under section 1170.95, subdivision (d), for substantial evidence.  (*People v. Gregerson* (2021) 202 Cal.App.4th 306, 320, review granted Apr. 28, 2021, S267624; *Rodriguez, supra*, 58 Cal.App.5th at p. 238, review granted; *People v. Bascomb, supra*, 55 Cal.App.5th at p. 1087.)  "We '"examine the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value that would support a rational trier of fact in finding [the defendant guilty] beyond a reasonable doubt."' [Citation.]  Our job on review is different from the trial judge's job in deciding the petition.  While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt." (*People v. Clements* (2021) 60 Cal.App.5th 597, 618, review granted Apr. 28, 2021, S267624.)

### 2.    *Analysis*

Substantial evidence supported the superior court's finding Harris was a major participant in the underlying felony who

18

acted with reckless indifference to human life.  First, there is little question he was a "major participant" in the robbery, an issue counsel for Harris effectively conceded at the evidentiary hearing:  "I don't think I can argue reasonably that Mr. Harris was not a major participant in the crime."  Indeed.  The record amply supports that Harris planned the robbery, chose the victim, physically took the property from the victim, punched the victim, and was present on the scene when Thomas shot the victim.  (See *Banks*, *supra*, 61 Cal.4th at p. 803.)

Second, substantial evidence concerning the relevant *Banks* and *Clark* factors supported the superior court's finding Harris acted with reckless indifference to human life.  The major participant requirement "'significantly overlap[s]'" the requirement of reckless indifference to human life, "'for the greater the defendant's participation in the felony murder, the more likely that he acted with reckless indifference to human life.'"  (*Clark*, *supra*, 63 Cal.4th at p. 615; see *ibid.* ["'even in cases where the fact that the defendant was a major participant in a felony did not suffice to establish reckless indifference, that fact would still often provide significant support for such a finding'"].)  As discussed, the extent of Harris's participation in the crime here was extremely high.

And evidence relevant to several individual factors further supported a finding Harris was "'aware of and willingly involved in the violent manner in which the particular offense [was] committed.'"  (*Harris*, *supra*, 60 Cal.App.5th at p. 955, review granted, quoting *Banks*, *supra*, 61 Cal.4th at p. 801.)  The California Supreme Court in *Clark* observed that the United States Supreme Court has "stressed the importance of presence to culpability."  (*Clark*, *supra*, 63 Cal.4th at p. 619.)  "'[T]he defendant's presence gives him an opportunity to act as a restraining influence on murderous cohorts.  If the defendant

19

fails to act as a restraining influence, then the defendant is arguably more at fault for the resulting murders.'" (*Ibid.*) Harris was physically present throughout the encounter that resulted in Calvert's death, and nothing suggests he did anything to restrain Thomas from shooting him.

Harris asserts he did not have an opportunity to restrain Thomas from shooting Calvert because, "once Calvert was confronted, the shooting happened almost immediately" and "was a 'somewhat impulsive' response by Thomas." He cites no evidence to support this assertion, however, and it is difficult to believe Harris would not have had an opportunity to register an objection to Thomas's shooting Calvert. But even if that were so, Harris could have tended to Calvert after he was shot—the man was still alive, staggering about—but Harris instead ran away. A defendant's failure to render aid to a wounded victim while present at the scene shows reckless indifference to human life. (See *Clark*, *supra*, 63 Cal.4th at p. 619.)

Harris also brought a gun to the robbery he planned. And though he may not have used the gun, it is eminently reasonable to infer he brought it because he was willing to use it if the robbery required it. (See *Clark*, *supra*, 63 Cal.4th at p. 617 ["'reckless indifference' . . . encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions"].) That Harris was personally armed and physically present throughout the crime distinguishes him from felony-murder defendants who lack the requisite reckless indifference to human life because they "'simply had awareness their confederates were armed and armed robberies carried a risk of death.'" (*Id.* at p. 618; see *People v. Bascomb*, *supra*, 55 Cal.App.5th at p. 1090 ["The defendants who have shown their culpability was too slight under *Banks* and *Clark* 'are those who

20

were not wielding guns themselves and also not present for the shooting (either because they were acting as getaway drivers or because they were involved in the planning of the crime only).'"]; see also *People v. Law*, *supra*, 48 Cal.App.5th at p. 825 ["we are not aware of a single case that concludes a defendant who personally committed a robbery, used a gun, and was present for the shooting did not meet the standard in section 190.2, subdivision (d)"], review granted.)

In addition, substantial evidence supported the superior court's finding that, far from attempting to reduce the risk that the robbery would turn violent, Harris escalated that risk by punching Calvert. Citing the trial testimony of the medical examiner, Bolduc, Harris argues that whether "Calvert was even punched is disputed," But two eyewitnesses, Bradley and Stringer, testified Harris "socked" Calvert moments before Thomas shot him. It is the superior court's role to resolve contradictions in the evidence and make credibility determinations, and in that role the superior court here concluded Harris punched Calvert.

Finally, Harris raises evidentiary objections he did not raise before the superior court and therefore has forfeited. (See *People v. McKinnon* (2011) 52 Cal.4th 610, 638 ["'[A]s a general rule, "the failure to object to errors committed at trial relieves the reviewing court of the obligation to consider those errors on appeal."'"].) Moreover, his primary objection is that it was improper for the superior court to rely on the factual summary from our opinion deciding Harris's direct appeal because that summary was inadmissible hearsay. We have previously concluded such reliance is proper, holding that in proceedings under section 1170.95, as in other postconviction proceedings, "statements from prior appellate opinions are admissible as

21

reliable hearsay even if they would not be admissible at trial." (*Harris, supra*, 60 Cal.App.5th at pp. 953-954, review granted; see *ibid.* [rejecting the argument that "factual statements in an appellate opinion are inadmissible hearsay and not properly considered in determining eligibility for relief under section 1170.95"]; *Verdugo, supra*, 44 Cal.App.5th at p. 333, review granted [same]; see also *People v. Clements, supra*, 60 Cal.App.5th at p. 612 [same].)[5]

## DISPOSITION

The superior court's order denying Harris's petition under section 1170.95 is affirmed.

SEGAL, J.

We concur:

PERLUSS, P. J.          FEUER, J.

---

[5]     Harris's other objections are that "any reliance on his opening brief [from his direct appeal] was improper" and that, "to the extent the court relied on Harris's preliminary hearing, this was questionable."  These fail for the additional reason that Harris cites nothing in the record suggesting the superior court relied on these documents.  Nor have we.