Filed 8/11/21  P. v. Fernandez CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JORGE FERNANDEZ, et al.,<br><br>    Defendants and Appellants. | B302183<br><br>Los Angeles County<br>Super. Ct. No. BA468095 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Eleanor J. Hunter, Judge. Affirmed in part, remanded with instructions.

Maxine Weksler, under appointment by the Court of Appeal, for Defendant and Appellant Jorge Fernandez.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant Young M. Tak.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Paul M. Roadarmel, Jr. and David A. Wildman, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

A jury convicted defendant and appellant Jorge Fernandez of murder, carjacking, robbery, and possession of a firearm by a felon. It convicted defendant and appellant Young Min Tak of carjacking and being an accessory after the fact to murder. The jury and court also found true various firearm and prior conviction allegations. On appeal, Fernandez argues: (1) the trial court abused its discretion in concluding his inculpatory statements were admissible; (2) his murder conviction is not supported by substantial evidence; (3) several of the Penal Code[1] section 667, subdivision (a)(1) enhancements the trial court imposed must be stricken; (4) either his carjacking or robbery sentence must be stayed under section 654; and (5) the 150-year-to-life sentence the trial court imposed was an abuse of discretion. Tak contends the trial court abused its discretion by giving him the maximum possible sentence. We order three of Fernandez's section 667, subdivision (a)(1) enhancements stricken. We also order the sentence for either his robbery or carjacking conviction stayed under section 654. In all other respects, the judgments are affirmed.

## PROCEDURAL BACKGROUND

The Los Angeles County District Attorney filed an information charging Fernandez with murder (§ 187, subd. (a); count one), possession of a firearm by a felon (§ 29800, subd. (a)(1); count four), and second degree robbery (§ 211; count five). The information also charged both Fernandez and Tak with

---

1      All further undesignated statutory references are to the Penal Code.

carjacking (§ 215, subd. (a); count two), and charged Tak with being an accessory after the fact to murder (§ 32; count three). The information alleged Fernandez personally and intentionally discharged a firearm in the commission of count one (§ 12022.53, subds. (b)-(d)) and Tak personally used a firearm in the commission of count two (§ 12022.53, subd. (b)). The information also alleged Fernandez sustained two prior serious felony convictions (§ 667, subd. (a)(1)) and two prior strike convictions (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)).

The jury found Fernandez and Tak ("defendants") guilty as charged and found the firearm allegations true.

The court found Fernandez's strike priors true and declined to strike them. The court sentenced Fernandez to 150 years to life in state prison, consisting of 80 years to life on count one (15 years to life for the murder, tripled to 45 years under the Three Strikes Law, plus 25 years to life imposed under section 12022.53, subdivision (d), and 10 years for two prior serious felony enhancements), and 35 years to life on counts two and five (on each count, 25-year-to-life third strike sentences plus 10 years imposed under section 667, subdivision (a)(1)). The court imposed an upper term of three years on count four, and doubled it to six years, but stayed the sentence under section 654.

The court sentenced Tak to 19 years and 8 months in state prison, including an upper term of 9 years for carjacking, 10 years for the firearm enhancement, and 8 months (one-third the middle term) for the accessory conviction.

Defendants timely appealed.

# FACTUAL BACKGROUND

## A. Prosecution Case

### 1. Fernandez and Tak's involvement with MS-13 and the Mexican Mafia

Fernandez (gang moniker "Solo") and Tak ("Scar") were members of the MS-13 street gang. MS-13 is controlled by the Mexican Mafia. Fernandez and Tak grew up together and remained friends. Tak drove a gray Nissan Armada and was often accompanied by Fernandez. Fernandez regularly carried a .40 caliber Glock handgun.

### 2. Murder of Dejon Ward
#### a. Shooting at the 7-Eleven and aftermath

At 8:00 a.m. on July 12, 2013, Dejon Ward borrowed his mother's car to drive from Victorville to the Beverly Hills Courthouse to pay a "fix-it" ticket. He ended up at a 7-Eleven on Venice Boulevard and 12th Street. E.H., who was at that intersection, heard a Latino man's voice from the direction of the 7-Eleven. The Latino man was talking to someone in a car. She then heard a gunshot, after which she saw the car rolling to a stop. She believed the driver was dead.

Another witness called 911 and reported the perpetrators were "Hispanic guys" who "shot into the dude's car" and fled in a gray Nissan.

Los Angeles Police Officer Kouvelis arrived at the 7-Eleven, saw the car Ward had been driving smashed into a building, and observed Ward was dead. Officers found an expended .40-caliber casing in the passenger compartment of the car. The casing could only have been fired from a .40-caliber semiautomatic firearm.

4

Ward died from a single gunshot wound to his lungs and heart. Officer Kouvelis examined a surveillance video that captured two men arriving in the parking lot in a silver Armada, a smaller black car entering the parking lot, and two men exiting the Armada then running back to it and driving away.

On the day Ward was shot, Tak's parents owned a silver Nissan Armada. The parties stipulated Tak was driving the Armada that day.

Roughly a week after the shooting, Fernandez, Tak, Fernandez's girlfriend, and another woman went to Mexico. Former Mexican Mafia associate J.S. testified Fernandez and Tak returned by the time of J.S.'s wedding on March 1, 2014.

### b. Fernandez's admissions to Ward's murder

Fernandez made statements to several gang associates indicating that he killed Ward. Those associates testified at Fernandez and Tak's trial.

L.V. was a former MS-13 gang member who later worked as an FBI informant against the MS-13 gang. He identified Fernandez and Tak as MS-13 gang members. Fernandez made inculpatory statements to L.V. when the two men were in L.V.'s garage smoking marijuana. Fernandez showed L.V. a YouTube video with a title describing a murder outside a 7-Eleven.[2] The video showed Fernandez exit the passenger seat of the Nissan Armada. L.V. knew it was Fernandez because of how he dressed and wore his hat. Fernandez said he and Scar (i.e., Tak)

---

2    That surveillance video was uploaded to YouTube by the police to obtain leads. It was viewed by various witnesses in this case.

approached an African American man they believed was a Blood gang member and shot him. Fernandez also told L.V. the victim tried to drive away and lost control, slamming into a wall and some fencing. Fernandez said he fled to Mexico with his girlfriend after the shooting.

J.S. knew Fernandez and Tak to spend time together at a marijuana dispensary, the House of Dank, where the Mexican Mafia conducted business.[3] On one occasion, Fernandez and Tak went to the House of Dank in Tak's Nissan Armada, and Fernandez talked to J.S. about a murder he committed. Fernandez showed J.S. the video and asked if he was recognizable in it. J.S. recognized both Fernandez and Tak in the video, but it was because he knew them well. The next day, Fernandez told J.S. he "was on drugs, and he messed up" when he shot "the Black kid" (i.e., Ward). Fernandez explained he thought "the Black kid was saying something to Tak, so [Fernandez] just . . . ran up on him and shot him." J.S. testified Fernandez's gang had problems with African American gangs, and if a perceived rival gang member challenges you or your friends, you "[r]un up on them, shoot them, do whatever you gotta do." J.S. relayed Fernandez's statements to fellow gang member J.R., and explained Fernandez thought Ward was "hitting [Tak] up."[4]

---

3    J.S. had been a collector for the Mexican Mafia, and testified against Fernandez and Tak under a grant of immunity after being charged in an extortion case. Fernandez worked under J.S. in the gang hierarchy.

4    "Hitting up" means asking what gang someone is from, and is a challenge that will potentially lead to violence.

### 3. Carjacking of J.P.

On June 3, 2015, J.P. received a text from Peter Cha asking if they could meet up and talk. The two men had a relationship in which Cha would front J.P. marijuana and J.P. would later pay Cha after selling the marijuana. Cha would usually give him 10 to 15 pounds of marijuana, valued at $1,400 to $2,000 a pound. On this particular night, J.P. owed Cha between $7,000 and $10,000.

J.P. pulled into the parking lot of Piper's Restaurant on Western Avenue. He parked in the back area of the lot. Cha got in the car and asked J.P. when he would be paid. While they were talking, Tak opened the front passenger door and asked J,P. if he wanted to smoke. Cha seemed to know Tak. Cha then got out of the car, and Tak entered the car and pistol-whipped J.P. Fernandez entered the backseat and hit J.P. several times. Tak told J.P. "not to mess around" and this was not "a[n] [explitive] game[.]"

Fernandez told J.P. he now owed him the money he had previously owed Cha. Tak pointed the gun at J.P. Fernandez went through J.P.'s pockets and took his belt, money, and one of his cell phones. Fernandez told J.P. they were going to keep his car as collateral until he paid them the money he owed. Tak reiterated this was not a joke and threatened to kill J.P.

J.P. and Fernandez exited the car, and Tak drove away with it. Fernandez gave J.P. a towel to wipe the blood off his face. He told J.P. to go into the restaurant with him and another associate, Rico Bandz. Once they were in the restaurant, Fernandez again explained that J.P. now owed him the money, not Cha. Fernandez also told J.P. he would be taxed $10,000 a month because he knew where J.P. lived and where his girlfriend

lived. Fernandez and Bandz hit J.P. and forced him to do shots with people. J.P. took a cab home.

J.P. reported the incident to the police. He told them he remembered what the men looked like and could identify them. He also said Fernandez was wearing an ankle monitor. J.P. later identified Fernandez in a photographic six-pack. He also identified Tak in a photographic lineup, with the comment: "Looks like the carjacker but can't a hundred percent say it's him."[5]

Several weeks later, police found J.P.'s car. The searching officer found a cigarette near the buckle in the front seat. A criminalist determined the DNA on the cigarette matched Tak. She explained the DNA profile on the cigarette would occur in one in two sextillion individuals.

According to parole agent Jason Odgers, Fernandez was placed on parole and fitted with an ankle monitor in 2012. On June 3, 2015, Fernandez was wearing the ankle monitor. The monitor recorded his location at 222 N. Western Avenue, the address of Piper's Restaurant, between midnight and 1:25 a.m.[6]

## B. Defense Case

Fernandez called K.M. and Los Angeles Police Detective Robledo as defense witnesses.[7]

---

5    J.P. identified both Fernandez and Tak in court as the perpetrators.

6    Fernandez was not wearing the monitor on July 12, 2013, the day Ward was killed.

7    Tak did not call any witnesses.

K.M. was a crossing guard at Venice Boulevard and 12th Street the day Ward was shot. She saw a young African American man park in the 7-Eleven parking lot. Two men pulled up in another car, then followed the African American man into the 7-Eleven. The shooter, who was wearing a white T-shirt, stuck his left hand through the driver's side window with a gun and shot.

Detective Robledo interviewed K.M. telephonically. Robledo recorded the interview. According to K.M., the shooter wore beige shorts and had light skin. The other man with the shooter wore a baseball cap and had brown skin. K.M. only saw the suspects from the side and back, not the front. She could not tell if the shooter was Hispanic or African American. She said the shooter seemed somewhat tall.

When Detective Robledo interviewed Fernandez, he noted Fernandez weighed about 220 pounds and was about 5 feet, 11 inches, or 6 feet tall.

## DISCUSSION

I.     **The trial court did not abuse its discretion in concluding Fernandez's inculpatory statements were admissible**

Fernandez first argues the trial court abused its discretion in admitting Fernandez's inculpatory statements to various informants under the declarations against penal interest exception to the hearsay rule. Fernandez alternatively argues the statements were inadmissible under Evidence Code section 352, and trial counsel was ineffective in failing to object on this ground. For the reasons discussed below, we reject these contentions.

## A. Background

At trial, Tak's attorney objected to the admission of hearsay statements Fernandez made to various informants. Fernandez did not join the objection. The court overruled Tak's objection, concluding the statements were admissible under the declarations against penal interest exception to the hearsay rule. The court explained:

> "The Court had the opportunity to listen to the taped statements of the various witnesses and what they told the officers that Mr. Fernandez allegedly said.
>
> "It was to these witnesses, who were not agents of the police – it was out of custody, it was – these statements were allegedly made amongst friends or colleagues or whatever you wanted to call their relationship.
>
> "I did not see that there was any sort of passing the blame more towards Mr. Tak and then self-preservation for Mr. Fernandez. In fact, almost the opposite with regard to that.
>
> "So, the court is going to find, over counsel's objection, that they are declarations against penal interest and they come in – and, therefore, the foundation with regard to trustworthiness has been established by the nature of the communications, who they were talking to, and what was said by way of involvement of various people.
>
> "The Court is going to allow it, under Evidence Code section 1230 . . . ."

Witnesses L.V., C.Z., and J.S., all went on to testify that Fernandez told them he shot and killed a young Black man he believed was a Blood gang member. Although J.R. did not hear the statements directly from Fernandez, he testified regarding what J.S. told him – that Fernandez said he killed an African American victim for "hitting Scar Face up[.]"

## B. General legal principles

Hearsay is "evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).) It is inadmissible unless an exception to the hearsay rule is satisfied. (*Id.*, subd. (b).) One such exception applies to statements made by a declarant that are against his or her penal interest. (Evid. Code, § 1230.)[8] "'The proponent of such evidence must show "that the declarant is unavailable, that the declaration was against the declarant's penal interest, and that the declaration was sufficiently reliable to warrant admission despite its hearsay character."' [Citation.]" (*People v. Geier* (2007) 41 Cal.4th 555, 584 (*Geier*).) "[E]ven when a hearsay statement

---

8  Evidence Code, section 1230 states: "Evidence of a statement by a declarant having sufficient knowledge of the subject is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and the statement, when made, was so far contrary to the declarant's pecuniary or proprietary interest, or so far subjected him to the risk of civil or criminal liability, or so far tended to render invalid a claim by him against another, or created such a risk of making him an object of hatred, ridicule, or social disgrace in the community, that a reasonable man in his position would not have made the statement unless he believed it to be true."

11

runs generally against the declarant's penal interest . . . , the statement may, in light of circumstances, lack sufficient indicia of trustworthiness to qualify for admission. [Citations.]" (*People v. Duarte* (2000) 24 Cal.4th 603, 614.) Another exception to the hearsay rule applies to party admissions. Under this exception, "[e]vidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party in either his individual or representative capacity, regardless of whether the statement was made in his individual or representative capacity." (Evid. Code, § 1220.)

"'[A] trial court has broad discretion to determine whether a party has established the foundational requirements for a hearsay exception.' [Citation.]" (*People v. Chhoun* (2021) 11 Cal.5th 1, 44 (*Chhoun*).) We review the trial court's decision to admit the evidence for abuse of discretion. (See *Geier*, *supra*, 41 Cal.4th at p. 585.) Under this standard, we will not disturb the trial court's ruling unless it ""exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice."' [Citation.]" (*Ibid.*)

### C. Analysis

#### 1. Fernandez has forfeited his Evidence Code section 1230 argument

We first address Fernandez's argument that the trial court abused its discretion by admitting his inculpatory statements under Evidence Code section 1230. As mentioned above, although Tak objected to the admission of Fernandez's statements on hearsay grounds, Fernandez did not join in Tak's objection or

object on any other ground.[9] It makes sense that Fernandez would not have objected because, as discussed below, his statements were admissible against him as party admissions. By not objecting in the trial court, Fernandez has forfeited his argument that the statements were inadmissible under the declarations against interest exception to the hearsay rule. (See *People v. Partida* (2005) 37 Cal.4th 428, 433-434; Evid. Code, § 353, subd. (a).)

### 2. Fernandez's inculpatory statements were admissible under Evidence Code section 1220

In addition to concluding Fernandez has forfeited his Evidence Code section 1230 argument by failing to object in the trial court, we note that because his statements were party admissions, they were therefore admissible under Evidence Code section 1220. Evidence Code section 1220 provides, in pertinent part: "Evidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party . . . ." Because Fernandez made his statements directly to L.V., C.Z., and J.S., those statements were all admissible party admissions.

With respect to the statements Fernandez made to J.S., which J.S. then related to J.R., Fernandez's statements were party admissions, and as to the second level of hearsay, J.S.'s statements to J.R. were admissible prior consistent statements under Evidence Code sections 1236 and 791. Regarding the second level of hearsay, the following rule applies: "Evidence of a

9     On appeal, Tak has not challenged the admission of Fernandez's statements under Evidence Code section 1230.

previous statement made by a witness is admissible under the prior consistent statement exception to the hearsay rule if there has been an express or implied charge that the witness's testimony is recently fabricated and the prior consistent statement was made before the motive for fabrication is alleged to have arisen. (Evid. Code, §§ 1236, 791.)" (*People v. Crew* (2003) 31 Cal.4th 822, 843.)[10]

As the trial court correctly noted, Fernandez's statements to J.S. were admissible party admissions, and J.S.'s statement to J.R. were admissible prior consistent statements. J.S. made the statements to J.R. (regarding what Fernandez had told J.S.) in the summer of 2013. In 2013, J.S. was still a gang member. J.S. made the statements to J.R. approximately five years before entering the leniency agreement in which he agreed to testify truthfully against Fernandez and Tak, and approximately four

10    Evidence Code section 1236 provides: "Evidence of a statement previously made by a witness is not made inadmissible by the hearsay rule if the statement is consistent with his testimony at the hearing and is offered in compliance with Section 791."

Evidence Code section 791 provides: "Evidence of a statement previously made by a witness that is consistent with his testimony at the hearing is inadmissible to support his credibility unless it is offered after: [¶] (a) Evidence of a statement made by him that is inconsistent with any part of his testimony at the hearing has been admitted for the purpose of attacking his credibility, and the statement was made before the alleged inconsistent statement; or [¶] (b) An express or implied charge has been made that his testimony at the hearing is recently fabricated or is influenced by bias or other improper motive, and the statement was made before the bias, motive for fabrication, or other improper motive is alleged to have arisen."

years before being arrested. When J.S. made the statements to J.R., J.S. was not in custody, had no charges pending against him, and had not been given immunity or leniency by any government agency in exchange for testimony. Thus, at that time, J.S. did not have a motive to fabricate the statements to J.R. In 2019, J.S. testified at Fernandez and Tak's trial. On cross-examination, Fernandez's attorney asked J.S. questions suggesting that, because of the leniency agreement, J.S. had an improper motive to fabricate his testimony that Fernandez had made inculpatory statements to him. Once Fernandez's attorney did so, J.S.'s statements to J.R. became admissible prior consistent statements under Evidence Code sections 1236 and 791.

In sum, Fernandez's inculpatory statements were admissible against him as admissions under Evidence Code 1220, and J.S.'s statements to J.R. were admissible prior consistent statements.

### 3. The evidence was admissible under Evidence Code section 352

Fernandez next contends his inculpatory statements and the informants' testimony relaying those statements were inadmissible under Evidence Code section 352.[11] Fernandez has forfeited this argument by failing to object in the trial court.

---

11     Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

(*People v. Alexander* (2010) 49 Cal.4th 846, 905; see Evid. Code, § 353, subd. (a).) Even assuming the argument had not been forfeited, and the trial court had been given an opportunity to rule on section 352 objections, it would not have abused its discretion by overruling them. We conclude the evidence was admissible under Evidence Code section 352. Fernandez's statements and the informants' testimony regarding those statements were highly probative on the issue of Fernandez's guilt. The danger of undue prejudice, confusion of issues, or misleading the jury did not substantially outweigh the evidence's probative value.[12]

## II. Substantial evidence supports Fernandez's murder conviction

Fernandez next contends his murder conviction is unsupported by substantial evidence because it was based primarily on the "inherently unreliable" testimony of several informants. We are not persuaded.

In reviewing a judgment for sufficiency of the evidence, we review the record in the light most favorable to the judgment to determine if there is substantial evidence from which any rational trier of fact could find each element of the crime beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 318-319 [99 S.Ct. 2781, 61 L.Ed.2d 560]; *Staten*, *supra*, 24 Cal.4th at p. 460.) We "presume in support of the judgment the

---

12     For this same reason, we reject Fernandez's alternative claim that trial counsel was ineffective by not objecting under Evidence Code section 352. (See, e.g., *People v. Thomas* (1992) 2 Cal.4th 489, 531 [failure to make meritless objection does not constitute ineffective assistance of counsel].)

16

existence of every fact that the trier of fact could reasonably deduce from the evidence. [Citation.]" (*People v. Medina* (2009) 46 Cal.4th 913, 919.) "Because we must draw all inferences in support of the judgment, defendant 'bears an enormous burden' when challenging the sufficiency of the evidence. [Citation.]" (*People v. Vasco* (2005) 131 Cal.App.4th 137, 161.) We accord due deference to the jury and do not substitute our own evaluation of a witness's credibility for that of the fact finder. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 (*Ochoa*).)

Applying these principles, we reject Fernandez's sufficiency argument. It is not this court's role to second-guess the jury's credibility determinations. (*Ochoa, supra*, 6 Cal.4th at p. 1206; see also *United States v. Larios* (9th Cir. 1981) 640 F.2d 938, 940 ["The testimony of one witness, even that of an informant, is sufficient to uphold a conviction.' [Citations.]"].)

## III. Three of Fernandez's prior serious felony conviction enhancements must be stricken

With respect to Fernandez, the trial court imposed two prior serious felony conviction enhancements on counts one, two, and five, respectively. The parties agree that one of those enhancements must be stricken on each count. We agree with the parties.

The district attorney alleged Fernandez sustained two prior serious felony convictions (§ 667, subd. (a)(1)) for separate robbery convictions charged in the same case (no. BA281428). Those two robbery convictions also had the same date of conviction, May 26, 2005. Section 667, subdivision (a)(1) provides: "Any person convicted of a serious felony who previously has been convicted of a serious felony in this state or of any offense

17

committed in another jurisdiction which includes all of the elements of any serious felony, shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction *on charges brought and tried separately . . . .*" (Italics added.) "[T]he requirement in section 667 that the predicate charges must have been 'brought and tried separately' demands that the underlying proceedings must have been formally distinct, from filing to adjudication of guilt." (*In re Harris* (1989) 49 Cal.3d 131, 136.)

Because Fernandez's two prior robbery convictions were not brought and tried separately, but rather were adjudicated in a single proceeding, the imposition of two enhancements on counts one, two, and five was an unauthorized sentence. We therefore vacate one of the two section 667, subdivision (a)(1) enhancements imposed on counts one, two, and five, resulting in a reduction of Fernandez's sentence by 15 years.

### IV.   Either Fernandez's robbery or carjacking conviction must be stayed under section 654

Fernandez contends the trial court violated section 654 by imposing consecutive sentences on counts five (robbery) and two (carjacking). The Attorney General disagrees. The question is close. On balance, Fernandez has the better argument. Thus, on remand, the trial court is ordered to stay sentencing on one of those two counts.

### A. Background

The jury found Fernandez guilty of robbing and carjacking J.P. In its sentencing memorandum, the prosecution argued the trial court should stay sentencing on count five under section 654.

18

At sentencing, the trial court disagreed, stating: "I believe that count [five] is not a 654 issue. I think there were two totally separate crimes with regard to the robbery [: 1] defendant going through his pockets and [2] assisting [in] taking the car."

## B. Analysis

Section 654, subdivision (a) provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision . . . ." "The proscription against double punishment in section 654 is applicable where there is a course of conduct which violates more than one statute and comprises an indivisible transaction punishable under more than one statute within the meaning of section 654." (*People v. Bauer* (1969) 1 Cal.3d 368, 376 (*Bauer*).)

*Bauer* is controlling here. In *Bauer,* three elderly women resided together in a house in Ventura. (*Bauer*, *supra*, 1 Cal.3d at p. 372.) Bauer and another man rang the doorbell and introduced themselves as gas company maintenance men who wished to check the stove. (*Ibid.*) After gaining admittance, Bauer drew a revolver and his accomplice a knife. (*Ibid.*) The men then tied up and blindfolded the women. (*Ibid.*) Bauer and the other man spent the next two hours ransacking the house and carrying the loot to the garage. (*Ibid.*) The loot included numerous items of personal property from each woman and several credit cards. (*Ibid.*) After looting the house, Bauer and his accomplice drove away in one of the women's cars. (*Ibid.*) The jury convicted Bauer of burglary, robbery, grand theft, and automobile theft. (*Id.* at p. 371.) The court imposed concurrent sentences for robbery and

auto theft. (*Id.* at pp. 371-372.) It did not sentence Bauer on the burglary and grand theft counts. (*Id.* at p. 372.)

In the Supreme Court, Bauer argued either the robbery or car theft sentence should be stayed under section 654. (*Bauer*, *supra*, 1 Cal.3d at p. 375.) The Supreme Court agreed. It explained: "The divisibility of a course of conduct depends upon the intent and objective of the actor, and if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one. [Citations.]" (*Id.* at p. 376.) "Under this principle, the taking of several items during the course of a robbery may not be used to furnish the basis for separate sentences." (*Id.* at pp. 376-377.)

*Bauer* compels reversal here. Fernandez harbored one intent and objective – to take whatever property J.P. had that was of value. (See *Bauer*, *supra*, 1 Cal.3d at p. 376.) He and Tak took J.P.'s belt, cash, phone, and car during one indivisible transaction. "[W]here a defendant robs his victim in one continuous transaction of several items of property, punishment for robbery on the basis of the taking of one of the items and other crimes on the basis of the taking of the other items is not permissible." (*Id.* at p. 377.)

In support of its argument that the trial court did not err under section 654, the Attorney General cites *People v. Capistrano* (2014) 59 Cal.4th 830 (*Capistrano*), overruled on another ground in *People v. Hardy* (2018) 5 Cal.5th 56, 104. In *Capistrano*, "[d]efendant and his cohorts confronted the victims at two points." (*Id.* at p. 887.) "They first accosted them at their cars and then again, inside the victims' residences when they demanded the victims' money and property." (*Ibid.*) The Supreme Court noted: "Had defendant simply intended to commit a

carjacking, he could have done so at the initial point of contact." (*Ibid.*) "The evidence reveal[ed], however, that defendant had another, distinct purpose—to rob (and commit other crimes) inside the victims' homes." (*Ibid.*) On these facts, the Supreme Court concluded: "The elevation of the threat to the victims by forcing them into their homes where defendant committed additional crimes amount[ed] to a separate criminal objective. [Citation.]" (*Ibid.*) Accordingly, the court found "no error in the trial court's refusal to stay the sentence on the carjacking counts." (*Ibid.*)

The facts of Fernandez's case are different from *Capistrano* and more analogous to *Bauer* for purposes of section 654. In *Capistrano*, unlike in Fernandez's case, the defendant initiated a carjacking outside the victims' homes, elevated the threat to the victims by forcing them into their homes where he robbed them, then drove away in the victims' cars. (*Capistrano*, *supra*, 59 Cal.4th at pp. 841-843, 887.) Here, in contrast with *Capistrano*, there was no elevation of threat based on a movement to a different location and the application of another threat at that location. Fernandez's case is closer to *Bauer*, which involved a single threat at one location, as well as the taking of multiple items of property during one indivisible transaction.

For these reasons, the trial court is directed to stay either Fernandez's robbery or carjacking sentence pursuant to section 654.

## V.     Fernandez's sentence was not arbitrary, unjust, or an abuse of discretion

Fernandez next challenges the trial court's denial of his motion to strike the firearm enhancement and strike priors,

arguing the sentence imposed (150 years to life) was arbitrary, unjust, and an abuse of discretion. We reject this contention for the reasons discussed below.

## A. Background

Before sentencing, Fernandez filed a motion asking the court to strike his strike priors under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*) and section 1385. He also asked the court to exercise its discretion to strike the section 12022.53, subdivision (d) gun enhancement attached to the murder conviction.[13] He argued the 2005 prior strikes were remote and imposing them would be an unnecessary punishment. He similarly argued it would be unnecessary to impose the gun enhancement. In court, Fernandez submitted on the written motion.

The court acknowledged the priors were from 2005, but noted Fernandez had not been released from parole until 2012, after which he committed the Ward murder in 2013 and the robbery and carjacking of J.P. in 2015. The court also noted Fernandez had receiving stolen property and firearm convictions from 2016 and a federal drug case from 2017. The court therefore rejected Fernandez's remoteness argument and denied the motion. The court sentenced Fernandez as a Third Strike offender for his murder, robbery, and carjacking convictions. The court also imposed the firearm enhancement.

---

13    Section 12022.53, subdivision (h) states: "The court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section . . . ."

22

## B. Analysis

"'A trial court's decision to impose a particular sentence is reviewed for abuse of discretion and will not be disturbed on appeal "unless its decision is so irrational or arbitrary that no reasonable person could agree with it."' [Citation.]" (*People v. Nicolas* (2017) 8 Cal.App.5th 1165, 1182 (*Nicolas*); see also *People v. Carmony* (2004) 33 Cal.4th 367, 373-375 (*Carmony*).) "[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law[ ] . . . 'in furtherance of justice' pursuant to Penal Code section 1385(a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

Applying these principles, we conclude the sentence the trial court imposed was not an abuse of discretion. The circumstances surrounding Fernandez's crimes show a troubling disregard for the safety and well-being of others, supporting the court's decision to impose sentence on the strike priors and firearm enhancement. Additionally, the court did not abuse its discretion by rejecting Fernandez's argument that the strike priors were sufficiently remote to justify granting the *Romero* motion. As the court correctly pointed out, after being paroled in 2012 for crimes from 2005, Fernandez murdered Ward in 2013 and robbed and carjacked J.P. in 2015. He also had state and

federal cases brought against him in 2016 and 2017. Given the circumstances of Fernandez's current offenses and his criminal history, we conclude the sentence imposed was not arbitrary, capricious, or irrational. (See, e.g., *People v. Cole* (2001) 88 Cal.App.4th 850, 873-874 [trial court did not abuse its discretion in denying *Romero* motion based on defendant's lengthy criminal history and the timing and nature of the offenses].)[14]

## VI.    Tak's sentence was not an abuse of discretion

Tak argues the trial court abused its discretion by imposing the maximum possible sentence. In particular, he challenges the court's decisions to (1) not strike the firearm enhancement attached to the carjacking conviction; and (2) impose the upper term for the carjacking conviction. We conclude the court did not abuse its discretion.

### A. Background

The jury convicted Tak of carjacking and being an accessory after the fact to murder. The jury also found true the allegation that Tak personally used a firearm in the commission of the carjacking. (§ 12022.53, subd. (b).)

At sentencing, Tak noted that he did not have an extensive criminal record and had never been in prison. He therefore asked that the trial court sentence him to a middle or lower term for the carjacking. He also asked the trial court to exercise its discretion

---

14    To the extent Fernandez suggests in his opening brief that his sentence violated the constitutional ban on cruel and unusual punishment, we reject this contention.

to strike the firearm enhancement based on his age and criminal history.

In support of its argument that the firearm enhancement should be imposed, the prosecution noted Tak hit and injured J.P. with the gun, and the enhancement could apply merely if Tak had pointed it at J.P. The prosecution also noted Tak had a record of possessing firearms. Tak's attorney responded that Tak did not fire the gun and J.P. did not need to be hospitalized. With respect to the carjacking term, the prosecution submitted to the court's discretion.

The court noted Tak (1) had been convicted of brandishing a firearm at age 13; (2) ran away with Fernandez when Ward was murdered in 2013, continuing down a criminal path rather than going to the police; (3) was convicted of marijuana possession in Texas in 2015; (4) played a major role in the attack on J.P., playing the role of enforcer; (5) was found in possession of an assault weapon in 2016; and (6) was found in possession for sale of five pounds of a controlled substance in 2017. The court therefore concluded although Tak had not been to state prison, his prior record was not minimal. The court also noted Tak was a gang member who played an instrumental role in the current offenses. For these reasons, the court declined to strike the firearm enhancement. The court selected the upper term for the carjacking because Tak's criminal conduct had been escalating in violence and J.P. was particularly vulnerable.

The court thus imposed the maximum possible sentence, consisting of a 9-year upper term for the carjacking conviction, 10 years for the gun enhancement, and 8 months (one-third the middle term) for the accessory conviction.

**B. Analysis**

We review Tak's sentence for abuse of discretion and do not reverse unless the trial court's decision was ""'so irrational or arbitrary that no reasonable person could agree with it.'" [Citation.]" (*Nicolas*, *supra*, 8 Cal.App.5th at p. 1182; see also *Carmony*, *supra*, 33 Cal.4th at pp. 373-375.) Applying this deferential standard, we affirm Tak's sentence. The court acted well within its broad discretion when it declined to strike the firearm enhancement in light of Tak's criminal history and his misconduct in the current offenses. The court likewise did not abuse its discretion by imposing the upper term for Tak's carjacking conviction. "[A] single valid factor in aggravation is sufficient to justify an upper term. [Citation.]" (*People v. Forster* (1994) 29 Cal.App.4th 1746, 1759.) As previously noted, when imposing the upper term, the court properly noted Tak's prior convictions had been increasing in seriousness and J.P. was particularly vulnerable. (See Cal. Rules of Court, rule 4.421(a)(3) & (b)(2).)

## DISPOSITION

The case is remanded to the trial court. On remand, the trial court shall vacate one of the two section 667, subdivision (a)(1) enhancements imposed on counts one, two, and five, resulting in a reduction of Fernandez's sentence by 15 years. Additionally, the trial court shall stay Fernandez's sentence on either count two or count five pursuant to section 654. The judgments are otherwise affirmed. The clerk of the superior court is directed to prepare an amended abstract of judgment for Fernandez and forward it to the Department of Corrections and Rehabilitation.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, J.

We concur:

MANELLA, P.J.

WILLHITE, J.

27